**TELEPHONE NEWS SYSTEM, INC., an Illinois corporation, Plaintiff,**

**v.**

**ILLINOIS BELL TELEPHONE COMPANY, an Illinois corporation, Defendant,**

**United States of America, Defendant-Intervenor.**

**Civ. A. No. 62 C 941.**

United States District Court
N. D. Illinois, E. D.
Oct. 23, 1962.

Thomas D. Nash, Jr., and Robert M. Ahern, Chicago, Ill., for plaintiff.

Walter Cummings, Jr., Sidley, Austin, Burgess & Smith, Chicago, Ill., for defendant.

James P. O'Brien, U. S. Atty., for defendant-intervenor.

WILL, District Judge.

The Court, having examined the pleadings, the Stipulations of Facts, and the documents admitted as evidence in this case, and having heard the arguments of and examined the briefs filed by counsel, makes the following Findings of Fact and Conclusions of Law:

## Findings of Fact

1. Telephone News System, Inc. (hereinafter called "plaintiff") is an Illinois corporation organized and existing since 1954. All of the issued and outstanding shares of said corporation are owned by Raymond J. MacMahon and Berneice MacMahon. Raymond J. MacMahon is president of the plaintiff, Berneice MacMahon is secretary and treasurer, and the three directors of plaintiff are Raymond J. MacMahon, Berneice MacMahon and Wilbur Hirtzer.

2. Plaintiff has been engaged in the business and activities hereinafter set forth since 1956 and maintains its office and principal place of business at 81 West Van Buren Street, Chicago, Illinois.

3. The defendant, Illinois Bell Telephone Company (hereinafter referred to as "Telephone Company"), is an Illinois corporation with its principal place of business at 212 West Washington Street, Chicago, Illinois. It is the only utility furnishing telephone service in the Chicago, Illinois area.

4. Plaintiff leases from United Press International News Service (hereinafter referred to as "United"), a device known as a "Sports Printer" through which it receives daily information and results of various sporting events.

5. The interval between the time the results and mutuels on a horse race at any given track become official and the time such information is transmitted by United over its Sports Printer service varies from a minimum of twelve minutes to a maximum of thirty minutes.

6. After receiving the results and mutuels of the races over the facilities of the United Sports Printer, plaintiff causes voice recordings to be made in its offices, which recordings give the name of the horses finishing first, second and third, and the mutuel price paid by the

winner only. Each of said recordings contains the results of approximately five races at the various major tracks throughout the country. On the last recording of the day, the win, place and show horses, together with the mutuel price paid by the winner only, is given. Also is recorded the name of the winner of the next to last race and the mutuel price paid thereon. The aforesaid last recording is played presently continuously from the time of its transcription at approximately 6:00 P.M. until the next day when, at approximately 1:00 P.M., new recordings are made as racing information becomes available to plaintiff from United.

Prior to April 30, 1962, information concerning the scratches was disseminated by recording, in the same manner as heretofore described, beginning at approximately 9:30 A.M. each racing day.

7. These recordings are transcribed on an electronic device leased from Telephone Company, and from approximately 1:00 P.M. until 6:00 P.M. daily, except Sundays, said recordings are revised and brought up to date on an average of four or five times per hour in order to reflect the results of later races after information concerning the same is received by plaintiff over the United Sports Printer. The results are transcribed on an average of five or ten minutes after they are received by plaintiff over the United Sports Printer.

8. The recorded racing information as hereinabove described is available daily without charge, and may be obtained by any person who telephones WEbster 9-1900. The aforesaid exchange is listed in the Chicago Telephone directory and is serviced by and consists of 70 trunk lines. This is the only manner in which any facilities of Telephone Company are employed by plaintiff for dissemination of the aforedescribed racing information.

9. Plaintiff's only source of income for the aforedescribed services in the operation of its business is derived from payments received from Illinois Sports News of $600 per week. Said payment is for spot advertising commercials, which messages are transcribed on the same recordings which disseminate the results and mutuel price paid by the winning horse as aforesaid.

10. Plaintiff's facilities were utilized by LeRoy Retelle of Lansing, Michigan from May of 1960 until October of 1961 on the average of six days a week. During that time Retelle was engaged in the business of receiving wagers or bets on horse races as an agent of one, Maurice Ramont. He telephoned WEbster 9-1900 either from pay telephones in and about Lansing, Michigan, or from his residence telephone IVanhoe 4-9617. Information obtained by Ratelle pursuant to such calls was used by him in connection with the receiving and paying off of bets on horse races.

11. Neither plaintiff nor its employees accepts bets or wagers either by telephone or telegraph or otherwise.

12. The general regulations of the Illinois Bell Telephone Company applicable to general local exchange tariffs provide in part as follows:

"USE OF SERVICE FOR UNLAWFUL PURPOSES—The service is furnished subject to the condition that it shall not be used for the purpose of making or accepting bets, furnishing information, or for any other purposes in connection with any gambling scheme, business or device, or for any similar unlawful purpose. Any subscriber whose service is to be discontinued or any applicant to whom service is to be denied under this regulation will be notified by the Telephone Company of his right to a hearing by the Illinois Commerce Commission to determine whether or not such service is being used or will be used in violation of this rule. Upon complaint to the Commission by any applicant or subscriber who is affected by the refusal or discontinuance of service in accordance with this rule, such service will be provided, continued or restored if the Commission shall determine that the service has not

been used or is not intended to be used in violation of this rule."

13. The general regulations of the American Telephone and Telegraph Company applicable to message toll telephone service provide, in part, as follows:

"USE OF SERVICE FOR UNLAWFUL PURPOSES—The service is furnished subject to the condition that it will not be used for an unlawful purpose."

14. The facilities of the Telephone Company are indispensable to the operations of plaintiff's business and the discontinuance of such services would force plaintiff out of business.

15. Under date of April 25, 1962, the United States Department of Justice, over the signature of Herbert J. Miller, Jr., Assistant Attorney General, wrote to the Telephone Company as follows:

"Mr. Floyd Brown
"Security Department
"Illinois Bell Telephone Company
"212 West Washington Street
"Chicago 6, Illinois
"Dear Mr. Brown:

"Information in the files of the Department of Justice reveals that the telephone facilities located at the following place are being and will be used for the transmission and receiving of gambling information in interstate commerce in violation of Federal law:
"Telephone News System, Incorporated
"81 West Van Buren Street
"Chicago, Illinois
"(WEbster 9-1900)

"Pursuant to the provisions of subsection (d) of Section 1084 of Title 18, United States Code, you are therefore required to discontinue the leasing of said facilities, after reasonable notice to the subscriber.

"In my judgment five days notice constitutes reasonable notice under the circumstances."

16. Under date of April 27, 1962, the Telephone Company, over the signature of F. H. Brown, Chief Special Agent, wrote to plaintiff as follows:

"Telephone News System, Incorporated
"81 West Van Buren Street
"Chicago, Illinois
"Gentlemen:

"We have received a letter from the United States Department of Justice, acting under Title 18 of the U.S. Code, Section 1084(d), requiring us to discontinue service on the telephone facilities furnished to you at 81 West Van Buren Street, Chicago, Illinois, after reasonable notice to you.

"It is our present intention to comply with this letter at 9 A.M., C.D.T., on May 5, 1962."

Conclusions of Law

1. Plaintiff's activities violate the provisions of Illinois Revised Statutes, Chapter 38, Section 28–1(a) (10).

2. Plaintiff's activities do not violate the provisions of Section 1084(a), Title 18 U.S.C.

3. Plaintiff's activities are within the ambit of Section 1084(d), Title 18 U.S.C.

4. A substantial question as to the constitutionality of Section 1084(d), Title 18 U.S.C. is raised and, pursuant to the provisions of Title 28 U.S.C. §§ 2282 and 2284, a three judge District Court should be convened to determine the constitutionality of such section.

Opinion

Plaintiff in this action seeks an injunction permanently restraining Telephone Company from discontinuing, disconnecting or otherwise terminating the telephone facilities heretofore furnished by such defendant to plaintiff. Upon petition of the plaintiff and with the consent of the defendant and the defendant-intervenor, United States of America, the Court has heretofore entered a temporary restraining order pending determination of the plaintiff's prayer for a permanent injunction.

In support of its request for a permanent injunction, plaintiff makes two principal contentions:

1. That its activities do not violate any Federal, State or local law and that therefore the provisions of Title 18 U.S.C. § 1084(d) are inapplicable to it; or

2. That, if it be determined that the provisions of such section are applicable to it, the Section in question is invalid in that it is contrary to the First and Fifth Amendments to the Constitution of the United States.

The government, as defendant-intervenor, on the other hand, contends:

1. That the activities of the plaintiff do violate certain Federal and State laws, to wit—

   (a) Chapt. 38, Illinois Revised Statutes, Section 28–1(a) (10);

   (b) Title 18 U.S.C. § 1084(a);

   (c) Title 47 U.S.C. § 501.

2. That the provisions of Section 1084(d) in their application to the plaintiff are valid and not in violation of either the First or Fifth Amendments to the Constitution of the United States.

Defendant Telephone Company takes no position with respect to whether or not the activities of plaintiff violate any Federal, State or local law but asserts simply that if it be found that they do, the procedures established by Section 1084(d) of Title 18 do not violate constitutional due process. That section, under which the Department of Justice demanded of the defendant Telephone Company that it terminate the services being rendered to plaintiff and pursuant to which such defendant notified plaintiff of its intention to discontinue such services, reads as follows:

"(d) When any common carrier, subject to the jurisdiction of the Federal Communications Commission, is notified in writing by a Federal, State or local law enforcement agency, acting within its jurisdiction, that any facility furnished by it is being used or will be used for the purpose of transmitting or receiving gambling information in interstate or foreign commerce in violation of Federal, State or local law, it shall discontinue or refuse, the leasing, furnishing or maintaining of such facility, after reasonable notice to the subscriber, but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency. Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a Federal court or in a State or local tribunal or agency, that such facility should not be discontinued or removed, or should be restored."

■ For the reasons set forth in the Court's opinion in Kelly et al. v. Illinois Bell Telephone Company et al., D.C., 210 F.Supp. 456 decided earlier today, it is held that the burden of proof in this action rests with the defendant and the defendant-intervenor and that the standard of proof required is a preponderance of the evidence.

Similarly, as in that case, the first question to be determined is whether the record before this Court establishes by a preponderance of the evidence that the plaintiff is guilty of violating some Federal, State or local law so that the sanctions of Section 1084(d) of Title 18 may properly be applied to it.

■ The first such law urged by the government is Section 28–1(a) (10) of the Illinois Criminal Code of 1961. This provision, which became effective January 1, 1962, provides that a person commits illegal gambling when he—

"Knowingly transmits information as to wagers, betting odds or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly installs or maintains equipment for the transmission or receipt of such information."

It is the government's contention that the information transmitted by plaintiff over its 70 trunk telephone lines regarding winners and wagering results constitutes "information as to wagers, bet-

ting odds or changes in betting odds" within the meaning of Section 28–1(a) (10). The plaintiff contends that a proper interpretation of the statute would limit its application to "rapid" or "fast" transmission of information as to the odds on the various horses at the track as determined by the money wagered there and the changes which occur in those track odds from the time the betting is opened on a particular horse race until the mutuel windows are closed. The plaintiff contends that its transmission of information as to the names of the horses finishing first, second and third in any given race and the odds paid at the track on the winning horse, which information is transmitted at least twelve or more minutes after the conclusion of the race, does not constitute such rapid communication as is encompassed by the section in question.

"Fast" or "rapid" are of course relative terms. It is a matter of record, as disclosed by plaintiff's exhibits C and D received in evidence, that the interval between races at the various horse race tracks throughout the United States is normally at least twenty or more minutes. At many tracks, the races are scheduled to start at half-hour intervals.

The parties have stipulated and the Court has found that the information as to race results is customarily received by plaintiff over its leased United Press International Sports Printer between twelve and thirty minutes after the conclusion of the race and is transcribed by plaintiff and transmitted to persons calling its telephone number, WEbster 9-1900, on an average of five or ten minutes after receipt.

Under the circumstances, it would appear that plaintiff's transmission is relatively fast or rapid and, on that score at least, is within the scope of Section 28–1 (a) (10).

The Court has already indicated in its opinion in the Kelly case that a reasonable construction of the section also requires that it be limited to the transmission of information having some direct or indirect relation to gambling activi-

ties. In contrast to the record in the Kelly case, in which there is no evidence that the transmission by telephone or telegraph of information by plaintiffs was directly or indirectly related to illegal gambling activities, the only evidence on the subject in the instant case indicates that the telephone information service furnished by plaintiff was in fact used by one Retelle, a professional gambler and bookmaker in Lansing, Michigan. Moreover, while it was stipulated that plaintiffs' publications in the Kelly case were sold at race tracks in the Chicago area and used in connection with legal gambling activities, there is no evidence in the record in the instant case to indicate any legal use of plaintiff's information service. It is obvious that a person placing a legal bet at a race track has no need to ascertain the results of the race by resort to plaintiff's facilities.

The plaintiff also contends that the information transmitted by it does not constitute "information as to wagers, betting odds or changes in betting odds" within the meaning of Section 28–1(a) (10). In this connection, it points out that the only information which it furnishes in its telephone service is the names of the horses finishing first, second and third in any given race and the price or odds paid at the track for a bet placed on the winning horse. The government, on the other hand, contends that information as to the price or odds paid on the winning horse constitutes information as to wagers as well as information as to betting odds within the meaning of the section.

In this regard, reference to the statement of the Joint Committee which drafted the revised Illinois Criminal Code is helpful. The report of that committee indicates that it intended to make it an offense "knowingly to transmit betting information over the telephone" and that it was designed "to reach middlemen, agents and other participants in the gambling racket who might not technically qualify as offenders under other subsections of the article." The information transmitted by plaintiff certain-

ly is "betting information" and would appear to be within the purview of the section in question.

Under the circumstances, it is the opinion of the Court that the transmission of information by plaintiff of the nature and within the time heretofore indicated through the 70 telephone lines leased by it from the Telephone Company is in violation of the provisions of Section 28–1(a) (10) of the Illinois Criminal Code of 1961.

■ The first Federal statute alleged to be violated by plaintiff is Section 1084(a) of Title 18 United States Code, which reads as follows:

"(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both."

For the reasons set out in the Court's opinion in the Kelly case, it is held that the plaintiff is not "engaged in the business of betting or wagering". Accordingly, its activities are not in violation of the provisions of Section 1084(a) of Title 18 U.S.C.

The other Federal statute cited by the government is Section 501 of Title 47 which provides—

"Any person who wilfully and knowingly * * * causes or suffers to be done any act * * * in this chapter prohibited * * * shall upon conviction thereof, be punished * * * by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year * * *."

■ It is settled that when a subscriber uses a telephone facility for purposes which constitute a violation of applicable State laws, he causes the utility to supply service prohibited under its tariff, McBride v. Western Union Telegraph Company, 9 Cir.1948, 171 F.2d 1. There is, however, no evidence in the record before the Court which discloses any intent on the part of plaintiff "wilfully and knowingly" to cause or suffer to be done any act prohibited in Title 47. Pugach v. Klein, D.C.S.D.N.Y.1961, 193 F.Supp. 630. It thus appears that the provisions of Section 501 of that Title cannot be invoked herein to support the government's position.

In summary, plaintiff's activities are found to be in violation of Section 28–1 (a) (10) of the Illinois Criminal Code and the provisions of Section 1084(d) of Title 18 U.S.C. are therefore applicable to it.

We come then to the second of plaintiff's contentions, namely, that if it be determined that the provisions of Section 1084(d) are applicable to it, the section is invalid and unconstitutional. The first question raised by this contention is whether or not this Court, sitting alone, has the power to determine the constitutional issue. Section 2282, Title 28 U.S. C., provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

■■ The mere assertion of the unconstitutionality of a Federal statute does not in and of itself require submission of the issue to a three judge court under the section in question. Jasper v. Sawyer, D.C.D.C.1951, 100 F.Supp. 421. If, however, a substantial Federal constitutional question is presented, a three judge court must be convened. Wicks v.

478

Southern Pacific Co., 9 Cir.1956, 231 F. 2d 130, cert. denied, 351 U.S. 946, 76 S. Ct. 845, 100 L.Ed. 1471; Anderson v. A. & W. Tractor Products, S.D.Ill.1960, 181 F.Supp. 90.

The statute here in question is a new one, having been passed by the Congress in the fall of 1961. The constitutionality of the procedure contemplated by Section 1084(d) has not, so far as this Court is aware, been considered by any other Federal Court. Therefore, in the *opinion* of the Court, the statute raises substantial constitutional questions. Accordingly, the Court will proceed to initiate the convening, pursuant to the provisions of Section 2284, Title 28 U.S.C., of a three judge District Court to consider the constitutional objections raised by plaintiff to the application of the statute in question to it.

Final disposition of the plaintiff's petition for a permanent injunction will be deferred pending such determination.