**People of the State of Illinois, Defendant in Error, v. Daniel Lofton, Plaintiff in Error.**

**Gen. No. 50,088.**

First District, Third Division.

November 4, 1965.

■

Richard M. Rosenberg, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John Gannon, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Daniel Lofton was convicted in a jury trial of the murder of Catherine Hamb and was sentenced to the penitentiary for a minimum of 14 and a maximum of 25 years. He appeals, alleging that the evidence did not prove him guilty beyond a reasonable doubt and that the argument of the prosecutor was prejudicial.

Daniel Lofton was a married man with three children and at the time of the trial was 29 years of age. He had known Catherine Hamb a long time and had sexual relations with her for several years. He admits that on the night of the shooting he was in Catherine Hamb's apartment and that he fired the gun which inflicted the fatal wound upon her. The conflict in the evidence concerns the shooting itself and the events directly preceding it.

The evidence presented by the State indicated that on the night of April 27, 1962, Lofton arrived at the apartment building in which Catherine Hamb lived some time between 10:30 and a quarter to 11:00. A neighbor who lived close by testified she saw Lofton going toward the basement apartment of her neighbor, Rosa Thomas, and that she saw him take a gun from one pocket and transfer it to another. At about 11:00 p. m. she heard a pistol fired.

Mrs. Thomas testified that she had spent the evening with the deceased and left her around 10:00 p. m. At

240

about 10:45 Lofton came to her door. He told her that he had telephoned Catherine Hamb a half-hour earlier and that she said for him to come over, but she had not let him in when he called on her. He asked Mrs. Thomas if Catherine was at home and she replied that she had seen her earlier. He said: "[S]he may be with Will." He said that he would go back and see if he could get in. Mrs. Thomas testified that while he was speaking to her he pulled something from his pocket. She could not identify it in the darkness, but she heard a clicking sound and saw him stick the object into his belt.

Mrs. Thomas went to the Hamb apartment the following morning. She found Catherine Hamb with a bullet wound in her head and in serious condition. She called the police and Miss Hamb was taken to a hospital where she remained until May 14th. She was allowed to return home but was unable to care for herself and Mrs. Thomas assisted her with her personal needs. She died on June 5th of an abcess of the brain caused by an infection which developed along the path of the bullet. .

After the shooting the police instituted a search for Lofton but were unable to locate him for more than a month. On May 29th he was arrested in the home of one Maggie Williamson, where he was found hiding in a bedroom closet on the second floor. He first denied shooting Catherine Hamb but later admitted that he had shot her and that he had thrown the gun into Lake Michigan. He was taken to the lake and he showed the police the place where the gun had been thrown.

Lofton, who testified in his own behalf, was the only witness to recount the purported circumstances of the shooting itself. He admitted carrying on an affair with the deceased for seven or eight years but stated that he had not seen her during the four months prior to the shooting. He and his wife were working at a small tavern which was owned by his mother. He stated that on the evening of April 27th Catherine Hamb called him

241

at the tavern and told him that she wanted to see him. He left the tavern, drove his wife home, got his pistol from his home and then went on to see Miss Hamb. He said he took his pistol with him because he intended to return to the tavern and would be bringing money home. After he parked his car in front of Miss Hamb's apartment, he took the gun, which he said was a .38 or a .32 "automatic revolver," from the seat of the car on which it was lying and placed it in his belt. He rang her bell but was unable to gain entrance and then went to see Rosa Thomas to make inquiries. He said he had the gun in his belt but he denied pulling it out at any time. He went back to the apartment, knocked on the back door, and Catherine admitted him.

She sat down in one of the kitchen chairs and he stood near her, the gun still in his belt. According to Lofton she asked why he had not come to see her of late and he told her that the tavern was occupying all of his time and that he would be unable to see her in the future. As he was saying this he started to sit down and, finding that the gun in his belt made this uncomfortable, took it from his belt intending to put it in his pocket. At that moment Catherine jumped up from her chair and as she did so her left hand struck the gun causing it to discharge. He said he had his finger on the trigger but that he did not pull it. Lofton stated that he became frightened and fled, drove around for some time and then went to the lake front and threw the gun away. He said that he stopped at a phone booth in the area and notified the police of the shooting but did not give his name and did not call a doctor. After this he returned to the tavern.

His explanation for not going to the police was simply that he was frightened and unsure of what he should do. He explained that the "Will" he had mentioned to Mrs. Thomas was another boyfriend of Catherine Hamb's. He admitted hiding in Maggie Williamson's apartment

and his explanation for being in the closet was that he slept there.

The State introduced rebuttal evidence showing that Lofton had seen the deceased in the months just prior to the shooting. A police officer testified that Lofton never told them that the deceased's hand struck his gun prior to its going off; what he had told them was that she had raised her hand in front of her face just before she was shot.

It is the defendant's contention that Catherine Hamb died as the result of an accident and that he should not be held guilty of murder because there is no evidence that he intended to inflict great bodily harm upon her or to kill her. He points out that he and the deceased were friends, that he had no reason for killing her and no motive was proved for his doing so; that his conduct before the shooting is inconsistent with an intention to kill her as is his firing the pistol but once, and that the coroner's physician, who testified that her left index finger had an old scar an inch and a half long and that the bullet in her head traveled downward and backward, corroborated his version of what occurred. He argues that under the evidence there is a reasonable hypothesis of innocence; that he was the only eyewitness to the shooting and his direct testimony that it was an accident must be accepted over the State's circumstantial evidence.

■■ A conviction based on circumstantial evidence may be upheld where the proof of circumstances leads on the whole to a satisfactory conclusion and produces a reasonable and moral certainty that the defendant committed the crime as charged. People v. Bernette, 30 Ill2d 359, 197 NE2d 436. It is not necessary that the jury be convinced beyond a reasonable doubt of each link in the chain of proof if the whole convinces of guilt beyond a reasonable doubt. People v. Franklin, 341 Ill 499, 173 NE 607.

243

■ ■ The jury could have reasonably believed that outside of Rosa Thomas' apartment Lofton moved his gun from one pocket to another; that in the doorway of that apartment he again took it out, did something to it which made it click and placed it in his belt; that in doing this he was readying the weapon with the intent of using it and that he went to Catherine Hamb's apartment carrying a loaded gun ready to be fired. From Lofton's own testimony we know that he was holding the gun with his finger on the trigger at the time she was shot, and that after the shot had been fired he fled and disposed of the gun in a place where there was not much chance of its ever being recovered. While flight from the scene of a crime does not, in and of itself, prove guilt, if it is of such a character that it indicates an attempt to avoid capture and thus shows a consciousness of guilt on the part of the defendant, it may be considered with all the other evidence in the case as a factor tending to show guilt. People v. Haygood, 60 Ill App2d 70, 208 NE2d 373; People v. Brown, 27 Ill2d 23, 187 NE2d 728; People v. Weber, 401 Ill 584, 83 NE2d 297. The jury could well infer an intent to avoid capture and a consciousness of guilt from the defendant's flight and from his remaining in hiding until arrested. His testimony that he anonymously called the police from a lake front phone booth is unsupported and, since his testimony had been discredited in other respects, the jury might have attached little credence to his statement. At any rate, such a call, if made, would not be of much value in mitigating the inference of guilt that could be drawn from his flight and subsequent efforts to remain hidden.

■ The evidence presented by the State was sufficient, when taken alone, to convict the defendant beyond a reasonable doubt and he is placed in a position where his defense, that the shooting was accidental, must stand or fall on the weight and credibility to be attached to his own testimony. It is never necessary that the defend-

ant in a criminal action take the stand in his own behalf, but when he chooses so to do he must expect to be judged by the same standards of credibility used by the jury in assessing the merit of any other witness. He necessarily runs the risk of being disbelieved or discredited. It has been said that when a defendant undertakes to explain his presence at the scene of a crime while denying any participation in the crime, he must tell a reasonable story or be judged by its improbabilities. People v. Lane, 29 Ill2d 326, 194 NE2d 272; People v. Hansen, 28 Ill2d 322, 192 NE2d 359.

■ The jury found Lofton's story unworthy of belief, and, therefore, he was left with no evidence to support a hypothesis of accident. The State's evidence was strong and convincing and was sufficient to sustain the jury's conclusion that he was proven guilty beyond a reasonable doubt.

The defendant complains that error was committed by the state's attorney in his argument to the jury. The assistant state's attorney who made the first of the two closing arguments was overzealous and mentioned four times the adulterous relationship between the defendant and the deceased. He also made representations of fact not in evidence concerning the operation of an automatic pistol and suggested that those jurors who were familiar with firearms explain the operation to others. Neither argument was objected to when it was made. The defendant now objects that the first was inflammatory and the second prejudicial. His contention about the latter is that it furnished information outside the record from which the jury could infer that he was preparing his pistol for firing at the time Mrs. Thomas heard him make the clicking noise. It is his further contention that from this the jury could also infer that it was his intention to kill the deceased.

■ A court of review will not consider objections to argument which are made for the first time on appeal

245

unless it appears that the argument is so seriously prejudicial as to prevent a defendant from receiving a fair trial. People v. Morgan, 20 Ill2d 437, 170 NE2d 529; People v. Moore, 9 Ill2d 224, 137 NE2d 246. While both arguments were improper, we do not think they prevented the defendant from receiving a fair trial.

██ ██ Lofton admitted his sexual relations with Catherine Hamb. This was part of the evidence and as such was subject to comment. While the assistant state's attorney commented on the relationship too often, he also cautioned the jury that the question they were to decide was not the morality of either Daniel Lofton or Catherine Hamb (who was unmarried and had two children) but was whether Lofton was guilty of murder. The impropriety of his too frequent comments was mitigated by this admonition.

The evidence was not clear whether the gun used by the defendant was a revolver or an automatic. Lofton variously referred to it as a "pistol" and as an "automatic revolver." Neither the prosecutor nor the attorney for the defendant asked him to describe the weapon but both assumed in their arguments that it was an automatic. There was no evidence of how this type of gun worked and each attorney went beyond the evidence in describing its operation: the state's attorney told how it was cocked and the defense attorney how it fired. The state's attorney said: "It is loaded by operating the slide. It pulls back the entire top of the gun and the feed mechanism puts a bullet up into the barrel. . . . The slide mechanism being operated putting the bullet into the barrel is what Rosa Thomas heard. . . . He was arming the pistol for firing. . . ." The defense attorney argued that the firing of but one shot showed that the shooting was an accident. He said: "This is an automatic pistol, mind you. And if he had kept his finger on that trigger, not one but six, seven or eight shells would have exploded." Whether either statement was correct or inaccurate was a matter

246

of speculation as far as the jury was concerned. While certain information about firearms is common knowledge, the method by which particular guns are loaded and discharged is not. Neither statement should have been made but the defense having made the same mistake as the prosecution cannot complain too effectively. The jury could have concluded on its own that the clicking sound heard by Mrs. Thomas had something to do with readying the gun and the state's attorney's statement would have done no more than reinforce that idea.

Whether the weapon was an automatic or a revolver is not too material. The guilt or innocence of the defendant does not depend on ballistics. The defendant admitted shooting the deceased and the question is whether the gun, automatic or revolver, was fired accidentally or purposefully. The defendant could say whatever he liked about how the shooting took place—there was no one to contradict him. But there were other things that showed his guilt such as his taking the gun with him from his car to the Hamb apartment, his transferring it from one position to another while he was on his way, his flight after the shooting, his disposal of the gun, his hiding, his denial of any knowledge of the shooting when first accosted, and his saying nothing, after he did acknowledge the shooting, about the deceased striking the gun with her hand.

The guilt of the defendant was established beyond a reasonable doubt and the errors in argument do not warrant a reversal. The judgment of the Criminal Court will be affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.