**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Milton RUTHSTEIN, Defendant-**
**Appellant.**

**No. 17187.**

United States Court of Appeals
Seventh Circuit.

July 10, 1969.

Rehearing Denied Aug. 17, 1969.

William J. Nellis, Bernard B. Brody, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Chicago, Ill., John Peter Lulinski, Micháel B. Nash, Alan L. Adlestein, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, FAIRCHILD, Circuit Judge, and ESCHBACH, District Judge.

CASTLE, Chief Judge.

Defendant appeals from his conviction[1] by the district court, a jury having been waived, for violations of 18 U.S.C. §§ 371[2] and 1952.[3] The first eight

---

1. Defendant's co-defendant, Joseph Vazzano, who was also convicted, did not appeal.

2. "§ 371. Conspiracy to commit offense or to defraud United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. § 1952. "Interstate and foreign travel or transportation in aid of racketeering enterprises

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling * * *, in violation of the laws of the State in which they are committed or of the United States, * * *."

counts of the nine count indictment charged that defendant, in violation of 18 U.S.C. § 1952, used and caused to be used the interstate facilities of Western Union Telegraph Company on eight occasions with the intent to carry on a business enterprise involving gambling offenses in violation of the laws of Illinois,[4] which make it unlawful to knowingly transmit information as to wagers, betting odds, or changes in such odds by telephone or similar equipment and to install or maintain equipment for gambling purposes. The ninth count charged conspiracy to violate § 1952 between April and June, 1965. Counts two and three were dismissed on motion of the Government and defendant was convicted of the remaining counts, sentenced to concurrent terms of 18 months, and fined $2000.

Defendant is charged with operating a gambling enterprise in which he, or others acting in his behalf, sold the numbers of winning horses of races run at various locations across the country to customers who would pay in advance by Western Union money order. Various aliases were used by defendant who, until November 1966, received his information from Delaware Sports Service in Wilmington, Delaware, minutes after the race. Defendant's customers would use, or attempt to use, the winning numbers to place bets with bookmakers who did not yet know the race results.[5] Defendant's customers would call in advance and indicate in which future race or races they were interested, and defendant, upon receiving the numbers of the winners from his source, would immediately relay it by telephone from his two pizza restaurants in Chicago, Illinois to the customers. Although one customer called defendant from an Illinois location, all money orders were sent from other states. Each count in the indictment, except the conspiracy count, concerned a specific interstate transaction involving the use of Western Union money orders.

Defendant, on appeal, contends that the evidence did not support the district court's finding of guilty in that it did not establish beyond a reasonable doubt the defendant's use of interstate commerce facilities, his subsequent promotion of the unlawful activity, and his participation in a criminal offense. We shall discuss these issues in the order raised.

I

Defendant first asserts that the purpose of the payments made by his customers were not "sufficiently related to the defendant's alleged gambling enterprise to place interstate payment within the interdiction of Section 1952," and that there was no proof of scienter. These two alleged facts, it is argued, distinguish the instant case from United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964). An examination of the record, however, reveals that the evidence, which this Court must view in the light most favorable to the Government,[6] was sufficient to support the conclusion that the defendant knowingly used, and caused to be used, interstate facilities to carry out the gambling enterprise.

The testimony of defendant's employee (an unindicted conspirator), Howard Easter, four of defendant's customers,

---

4. Ill.Rev.Stat., Ch. 38, Section 28–1. "Gambling. (a) A person commits gambling when he:

\*   \*   \*   \*   \*

(10) Knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly installs or maintains equipment for the transmission or receipt of such information; except that nothing in this subdivision (10) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests."

5. This technique is known as "past-posting."

6. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Weaver, 360 F.2d 903 (7th Cir. 1966), cert. den. 385 U.S. 825, 87 S.Ct. 57, 17 L.Ed.2d 61.

and defendant's own admissions to Federal Bureau of Investigation agents[7] disclosed that defendant required his customers to send money orders via Western Union before he would release the requested information. Western Union employee Mace testified that defendant was a steady receiver of money orders which on their face disclosed their out-of-state origin.[8] The relation of the payments to the gambling enterprise is manifested by defendant's own requirement of payment in advance before the wagering information would be released. His knowledge of the use of interstate commerce to carry on the unlawful activity was established by both his receipt of the money orders and his requirement that they be sent to him.

■ We therefore hold that the evidence was sufficient to support the finding, as required by § 1952, that defendant knowingly used interstate commerce in the gambling enterprise. United States v. Zizzo, *supra,* 338 F.2d at 580, held that a defendant can validly be convicted of violating § 1952 if it is proved that he caused the interstate transaction to take place, rather than actually participated in it personally. We are of the opinion, in light of the evidence discussed above, that this holding applies to the case at bar, and that the court below properly found that defendant possessed the necessary knowledge to support conviction.

7. The testimony regarding these admissions was not objected to by defendant.

8. The applications for the money orders in question were identified by defendant's customers as those filed by them in the states of origin.

9. "Section 1084. Transmission of wagering information; penalties.
(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to re-

## II

■ Defendant next contends that the race results enterprise could not be found to violate the state law, and therefore could not violate § 1952, for two reasons: (1) the Illinois statute cannot be interpreted to proscribe the activities with which defendant was charged since Congress, through its enactment of 18 U.S.C. § 1084, has pre-empted parallel state laws by occupying the field of transmission of wagering information; (2) defendant's alleged activities were "beyond the range" of the state statute.

1. Defendant's pre-emption argument is founded on the false notion that § 1084,[9] which is inapplicable to defendant in the instant case, was intended by Congress to occupy the field to the exclusion of parallel state legislation. In fact, the opposite is true. In Telephone News System, Inc. v. Illinois Bell Telephone Co., 220 F.Supp. 621, 627 (N.D.Ill.1963), aff'd per curiam, 376 U.S. 782, 84 S.Ct. 1134, 12 L.Ed.2d 83 (1964), a three-judge district court noted that the legislative history of § 1084 revealed that "the purpose of the bill is to assist the various states * * * in the enforcement of their laws pertaining to gambling * * * by prohibiting the use of wire communications facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate or foreign commerce." H.R.Rep. No. 967, 87th Cong., 1st Sess. (1961).

ceive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.
(b) Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State where betting on that sporting event or contest is legal into a State in which such betting is legal.
(c) Nothing contained in this section shall create immunity from criminal prosecution under any laws of any State."

In Delaware Sports Service v. Diamond State Telephone Co., 241 F.Supp. 847, at 851 (D.Del.1965), aff'd per curiam 355 F.2d 929 (3rd Cir. 1966), cert. den. 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed.2d 55 the court rejected an argument similar to defendant's in the instant case, stating that " * * * the purpose of the legislation [§ 1084] was to 'aid' the states. Such a purpose is inconsistent with the contention of pre-emption."

We agree with the above authorities that Congress has not pre-empted the states from proscribing the transmission of gambling information. The very language of § 1084(c) compels this conclusion:

"Nothing contained in this section shall create immunity from criminal prosecution under any laws of any State * * *."

Therefore, the Illinois statute could be validly interpreted as embracing the activities in which defendant was accused of participating.[10]

2. Defendant contends that the race results activities were beyond the scope of the Illinois statute, Ill.Rev.Stat., ch. 38, § 28–1(a) (10), since there was allegedly no proof of defendant's participation in the transmission of "wagers, betting odds, or changes in betting odds," and no proof as to the speed with which the transmissions were made. First of all, the statute covers *"information as to wagers,"* rather than merely the actual wagers themselves. The evidence elicited at defendant's trial amply supports the conclusion that defendant's activities came within those proscribed by the Illinois statute. See Telephone News System, Inc. v. Illinois Bell Telephone Co., 210 F.Supp. 471, 476–477 (N.D.Ill.1962).

Moreover, the drafters of the Illinois statute indicated that § 28–1(a) (10) was "designed to reach middlemen, agents, and other participants in the gambling racket who might not technically qualify as offenders under other subsections of this article." Tentative Final Draft of Proposed Illinois Revised Criminal Code of 1961, Committee Comments, pp. 307–308 (1960).

We reject defendant's contention that, since the statute was designed to apply only to "rapid" transmissions of gambling information, the conviction must be reversed because the evidence allegedly failed to establish the essential time elements. The evidence, with all reasonable inferences which may be drawn therefrom, and when viewed in the light most favorable to the Government,[11] shows that the transmission of the information was "rapid" indeed. Margaret Logue, an employee of Delaware Sports Service, testified that "within seconds after the race was over" the Sports Service would get the results and immediately give it to its customers, including defendant. Howard Easter, defendant's employee, testified that "[j]ust a matter of seconds" transpired between the receipt of the winning number from Delaware Sports Service and the relaying of the number to the defendant's customers. Thus, we find that there was substantial evidence to support the conclusion of rapidity.

We similarly reject defendant's contention "that the Government failed to establish that proscribed information was transmitted by the defendant to persons directly or indirectly engaged in *illegal gambling* operations." The evidence showed that defendant's customers were engaged in placing past-post wagers with bookmakers. In United States v. Bergland, 318 F.2d 159, 161 (7th Cir.

---

10. Defendant's reliance on Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), is mistaken. There, the Supreme Court held that the federal sedition laws, 18 U.S.C. § 2385, occupied the field to the exclusion of parallel state legislation, since the interest of the federal government in this area was paramount to that of the states. Thus, as distinguished from the instant case, the purpose of the Congressional Act in *Nelson* was not to assist the states, but to supplant their role in the field.

11. See footnote 6, *supra*.

1963), cert. den. sub nom. Cantrell v. United States, 375 U.S. 861, 84 S.Ct. 129, 11 L.Ed.2d 88, this Court noted that the Congressional Record indicated that "past-posting operations [were] one of the evils that Section 1084 [of Title 18, U.S.C.] would combat." Thus, since past-posting is illegal under § 1084 and since defendant's customers, to whom defendant transmitted the proscribed information, participated in this practice, all elements of § 28–1(a) (10) of Chapter 38, Ill.Rev.Stat., were established.

### III

Defendant's last contention is merely a catch-all, incorporating the prior arguments and concluding that there was no proof of defendant's participation in any criminal offense or conspiracy. Defendant argues that he was never identified as the person who effected any transmission of proscribed information, that the testimony of the four customers was uncorroborated, unworthy of belief, inaccurate, conclusory, and defective in never having revealed the content of any of the transactions, and that defendant was not proved to have had "knowledge of any actual or anticipated illegal use of the information transmitted." These allegations are themselves conclusory and unsupported by the record.

First, Easter's testimony directly established that defendant effected some of the transmissions personally and directed Easter to effect the others. The testimony of the four customers corroborated Easter and was itself corroborated by ample evidence at trial, including testimony, documentary evidence,[12] and defendant's own admissions. Moreover, the customers' testimony included descriptions of the content of the transmissions as race results. Defendant's last contention—that knowledge of the illegal use of the transmissions was not proved—is equally without merit. Besides the fact that the only logical inference that could be drawn from the evidence was that defendant knew the rea-

son his customers were willing to pay in advance for winning numbers, defendant himself stated to F.B.I. agent Briick that he assumed, although was not positive, that the relayed information was used for betting purposes. There was substantial evidence to support the findings of the district court on this point.

For the foregoing reasons, the judgment of conviction is affirmed.

Affirmed.

---

12. Besides the money orders, the Government produced defendant's books and records.