THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARY CURRAN, Defendant-Appellant.

(No. 55799;

First District—July 6, 1972.

Caplin & Golding, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Larry S. Boress, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Mary Curran, was indicted for gambling in violation of paragraph 28—1(a) (10), chapter 38, Ill. Rev. Stat., 1969. She waived a jury trial, was found guilty and placed on probation for six months.

Of the points raised on appeal we need consider but one: the evidence was insufficient to support a conviction.

Armed with a search warrant, officers of the Chicago Police Department made a forced entry into an apartment leased to the defendant. There were two people in the apartment, Mary Curran and Matt Raimondi. Recovered in a search of the premises were two one-hundred dollar bills and a sheet of paper, found in a hollowed crucifix in the bedroom, and water soluble paper, found in a piano bench.

Officer Corless, the State's sole witness, testified that he had been a policeman for five years and assigned to the Vice Control Division, Gambling Unit for approximately one year. Pieces of paper similar to the one found in the crucifix had been seen by him a half-dozen or more times. The specific paper contained a handwritten list of baseball teams and pitchers but had no betting notations on it. Corless could not identify the handwriting and he did not know if the games were played on the date of the raid.

While the police were in the apartment, Corless testified that the telephone rang four times. He answered the phone. Two of the callers asked for "Matt"; Corless answered "yes," and took down the information the callers gave him: "five on Sox to win, three on Sox to win, five on Cubs to win." None of the callers identified themselves.

The defendant testified that there were only two phone calls. She claimed the officer was wrong when, after the first call, he announced a bet was made. When the phone rang again, the police denied her request to answer the phone with the officers listening to the conversation on an extension. Curran denied accepting bets on the telephone or having the phone installed for the purpose of transmitting information concerning

wagers, betting odds, or changes in betting odds. She stated that the crucifix had been given to her as a gift; after she discovered it to be hollow, she placed the two one-hundred dollar bills within it. She said she was never known as "Matt," did not know of anybody using her telephone for betting purposes and did not know the list of baseball teams was in the crucifix.

Section 28—1(a) of the Criminal Code of 1961 delineates numerous activities as gambling offenses. Section (10) under which the indictment was brought states:

"(a) A person commits gambling when he:

\* \* \*

(10) Knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly installs or maintains equipment for the transmission or receipt of such information; except that nothing in this subdivision (10) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests \* \* \*." Ill. Rev. Stat., 1969, ch. 38, par. 28—1(a) (10).

The defendant was charged with violating only the first portion of the statute: knowingly transmitting "information as to wagers, betting odds and changes in betting odds by telephone". The indictment did not charge her with installing or maintaining "equipment for the transmission or receipt of such information". And she was not indicted for making, offering to make, or receiving bets. Her guilt or innocence depended upon proof beyond a reasonable doubt that she transmitted betting information by telephone.

The statute does not define the word "transmit" and nothing in the legislative history of the statute indicates that the word was intended to have a meaning other than its common one: to convey to another person, to pass on from one person or place to another. (Webster's Third New International Dictionary (1966).) The drafters of the statute state that subsection (a) (10) is:

"\* \* \* designed to reach middlemen, agents, and other participants in the gambling racket who might not technically qualify as offenders under other subsections of the article. It also reaches into the heart of syndicate activity by outlawing the operation of telephone networks necessary to furnish betting information." Committee Comments, S.H.A., ch. 38, art. 28, p. 627 (1970).

This purpose has been given effect in Federal cases which have applied the statute to the transmission of information pertaining to wagers, racing odds and results. See, *Angelini v. Illinois Bell Telephone Company* (7th Cir. 1969, 418 F.2d 111; *Kelly v. Illinois Bell Telephone Company* (N.D.

Ill. 1962), 210 F.Supp. 456 aff'd 325 F.2d 148 (7th Cir. 1963); *Telephone News System, Inc., v. Illinois Bell Telephone Company* (N.D. Ill. 1962), 210 F.Supp. 471, 220 F.Supp. 621 (N.D. Ill. 1963); *United States v. Ruthstein* (7th Cir. 1969), 414 F.2d 1079.

■■■ While we are not aware of an Illinois decision which has interpreted subsection (10), all of the Federal cases we have read involved the furnishing of gambling information. There is no evidence that Curran sent out or transmitted information. The evidence shows that she possessed a list of baseball teams and pitchers, and some water souble paper; that four telephone calls were received on her phone from unknown persons who asked for "Matt" and that two of them placed bets. She did not pass the information on to anyone else and there was no evidence from which an inference could be drawn that she intended to lay-off the bets with some third person. While it appears that she might qualify as an offender under other subsections of paragraph 28—1(a), or under the latter portion of subsection (10) in that she knowingly installed or maintained "equipment for the transmission or receipt of such information," she was not indicted for these offenses.

As this court observed in *People v. Galan* (1969), 101 Ill.App.2d 98, 249 N.E.2d 118, suspicious circumstances, although of probative value, cannot substitute for proof, and suspicions or probabilities are not enough to convict. Nor can making a bet or being a bookmaker, without supporting evidence, be equated with transmitting gambling information. The defendant's conviction is reversed.

Judgment reversed.

McGLOON, P. J., and McNAMARA, J., concur.