In re CHARLES WHITTENBURG, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. CHARLES WHITTENBURG, Respondent-Appellant.)

First District (3rd Division)   No. 62095

Opinion filed April 1, 1976.—Rehearing denied May 20, 1976.

794

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael Shabat, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Charles Whittenburg, along with four other youths, was found guilty of burglary, adjudged delinquent and committed to the Department of Corrections as a ward of the court. He appeals this finding, contending that the evidence of the State was not sufficient to establish his guilt beyond a reasonable doubt.

The home of Mrs. Henrie Gilmore, 9105 South Racine Avenue, Chicago, was burglarized on the afternoon of May 29, 1974. When she returned home at approximately 2 p.m. she discovered that a previously undamaged portion of a glass window, which was located in the side entrance door, was broken and that a camera and a tape recorder were missing. She identified the articles the same afternoon at a police station.

Chicago police officer Michael Martire and his partner were notified by radio that a burglary was in progress at 9105 South Racine. They parked their squad car in an alley to the north of the Racine address and approached the house on foot. When they were about 300 feet away they saw three boys, subsequently identified as Charles Whittenburg, James Williams and Anthony Groves, six inches from the house and two feet from the side door. The boys ran from the yard and the officers chased them. Martire's partner fired one warning shot into the air. Descriptions of the fleeing boys were given to some police officers who had converged on the scene and these officers continued the chase.

When Martire and his partner entered Mrs. Gilmore's yard they observed two other boys coming out of her home. One of them, identified as Felder Tatum, was carrying a camera and the other, Lionel Bell, was carrying a tape recorder. When Tatum and Bell saw the officers, they dropped the camera and recorder and ran. However, their path was blocked by a marked police car, so they turned back and ran right into the arms of Martire and his partner.

Paul Smajo was one of the officers who pursued the first three boys. He testified that he was no more than 30 to 40 feet behind them at any time and that he never lost sight of them until they ran into a home at 9106 South Aberdeen Street. Smajo instructed the other policemen to watch the back and the side of the house, while he went to the front and knocked on the door. He told a young girl who answered the door that he

just chased three boys to the back door of the home and that he was going to enter the home and search for them. Smajo testified that after he made this declaration, Groves, Charles Whittenburg and James Williams came to the front door and Groves stated that it would not be necessary for the police to search the home because "[w]e are the ones you are looking for." Smajo placed them under arrest.

Whittenburg testified that early in the afternoon of May 29 he left school with Groves. They met Williams and walked to a public park where they bought pop from a street vendor. As they were walking home from the park he saw "police cars* * * flying around the corner* * *." They continued walking until they heard gunshots and then started to run. He testified that even though he could not see anyone shooting at him or chasing him, he and his companions continued to run, and ran to Groves' home because Groves suggested this course of action. He said that Tatum and Bell were acquaintances of his, but he denied taking part in the burglary and disavowed being in the yard of the burglarized home. He said he had walked past 9105 South Racine prior to seeing the police cars or hearing the gunshots.

James Williams gave essentially the same testimony as Whittenburg. He denied participating in the burglary and said he did not hear Groves tell the police that they did not have to search his home because the three youths were the ones the officers were seeking.

Anthony Groves denied having made any statement indicating that he and his two friends were the ones the police were pursuing. He testified that he asked the police, "What do you all want me for?" To which they responded: "We know son," and took him into custody.

Whittenburg contends that the circumstantial evidence of his presence near the scene of the burglary and his flight are insufficient to sustain his conviction. He argues that Martire's assertion that when he was 300 feet away he saw the three youths six inches from the burglarized home and two feet from its broken door is implausible, and that this and testimonial contradictions impair his credibility as a witness.

■■ A conviction can be sustained upon circumstantial evidence as well as upon direct evidence. (*People v. Belousek* (1969), 110 Ill. App. 2d 442, 249 N.E.2d 693.) However, suspicious circumstances, although of probative value, cannot substitute for proof, and suspicions or probabilities are not enough to convict. (*People v. Curran* (1972), 6 Ill. App. 3d 792, 286 N.E.2d 594.) A conviction based on circumstantial evidence may be upheld only where the proof of circumstances leads on the whole to the conclusion beyond a reasonable doubt that the defendant committed the crime charged. (*People v. Lofton* (1965), 64 Ill. App. 2d 238, 212 N.E.2d 705.) Mere presence at the scene of a crime is not

sufficient in itself to sustain a conviction (*People v. Wilson* (1974), 19 Ill. App. 3d 625, 312 N.E.2d 30); nor does flight from the scene in and of itself prove guilt. *People v. Lofton.*

■■ Although we have some doubt that Martire, from a distance of 300 feet, could have determined that persons were only six inches from a building and two feet from a door, we believe that he could have observed them in close proximity to the side door which was the entrance used by the burglars. However, his testimony only established Whittenburg's presence at and flight from the scene of the burglary. He did not see him enter or leave Mrs. Gilmore's home, did not see him carrying any of her property and did not see him conversing with the actual burglars. Presence at the scene of a crime together with flight does not establish accountability in the absence of some other circumstance indicting a common design to do an unlawful act. *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606.

The question is whether this additional circumstance was supplied by Whittenburg's silence in the face of Groves' purported statement, "We are the ones you are looking for."

Although at first glance Groves' statement seems to be an admission of guilt, it can be given a construction that is both innocent and reasonable: The officer declared that he had chased three boys into Groves' house and he intended to search for them. The boys immediately came to the door— hardly the spontaneous act of persons with guilty consciences—and Groves' response could have meant that he was identifying the group as the boys who had just entered the home.

■■ Discounting Groves' statement because of its dubious incriminating purport, there is lacking any circumstance corroborating the suspicion generated by Whittenburg's prior actions. His presence near the burglary and his flight raise a suspicion of complicity, but nothing more. When the only evidence of guilt is circumstantial, the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651.) The total evidence does not establish Whittenburg's guilt beyond a reasonable doubt and his adjudication as a delinquent is reversed.

Reversed.

McNAMARA and McGLOON, JJ., concur.