**People of the State of Illinois, Plaintiff-Appellee, v. Will Scott, Defendant-Appellant.**

**Gen. No. 52,255.**

First District, Third Division.

May 22, 1969.

John K. Kneafsey, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

In a bench trial the defendant, Will Scott, was found guilty of the unlawful possession of a narcotic drug and was sentenced to the Illinois State Penitentiary for a term of not less than five nor more than seven years. From this judgment of conviction the defendant appeals.

The defendant contends that 1) the trial court's granting of an extension for trial violated his right to a speedy trial; 2) the trial court erred in allowing illegally obtained narcotics into evidence; and 3) the evidence was insufficient to establish his guilt beyond a reasonable doubt.

At the pretrial hearing on the motion to suppress and at the trial of the cause itself, the prosecution presented the following evidence. On the night of February 9–10, 1966, Officer Harold Johnson of the Chicago Police Department received a telephone call from Helen Robinson, alias Barbara Williams, who had aided the police in the past in securing convictions in narcotics cases. Mrs. Robinson told the police that she could make a "controlled buy" of narcotics from a man named Will in his apartment in the Wedgewood Hotel. She was taken to the police station, searched, and was given $23 in currency dusted with fluorescent powder.

Officers Harold Johnson and Felix Munez accompanied the informer to the Wedgewood Hotel, and they watched her get off the elevator and enter apartment 412. She remained in the apartment for about five minutes and then emerged and handed the police a tinfoil packet. The contents of the packet were field tested and were found to be heroin. Officer Munez remained to watch the door of the apartment while his fellow officer Johnson took the informer back to the police station where she was again searched. Johnson returned to the apartment and, accompanied by Munez, unlocked and opened the door to apartment 412 with the aid of a passkey. The police discovered the defendant standing near his bed while holding a hypodermic needle containing a white liquid. The police also saw two tinfoil packets in plain view on the bed. The packets were similar to the one given them by the informer. Seated on the bed was a woman known as Florence Bush who remained stationary. The packets were seized by the officers and the two occupants were

370

arrested. The packets also contained heroin. The defendant was searched and the predusted currency was found in his pocket. Fluorescent spots were also found on the defendant's right hand and on the lip of his pocket from which the currency had been taken. The defendant was taken into custody and charged with unlawful sale and unlawful possession of narcotic drugs.

The defendant testified that the police entered his apartment but took nothing from his premises. He admitted meeting in his apartment a woman introduced to him as Barbara Williams but denied giving narcotics to her.

■ ■ The defendant contends that the trial court abused its discretion in granting the State's petition for an extension within which to bring the defendant to trial, and therefore the defendant was not tried within the required time under section 103–5 of the Criminal Code (Ill Rev Stats 1965, c 38, § 103–5). The State petitioned for the extension on the ground that the material informer-witness, Helen Robinson, was unavailable and that her testimony was essential to the State's case. Only a few days prior to its petition, the State discovered that the informer was in the custody of federal authorities in West Virginia. The State continued to be unsuccessful in obtaining the witness and therefore decided to proceed to trial on the possession charge. The defendant seems to stress the fact that the State's failure to call the informant at trial on the possession charge indicates that the extension should not have been given in the first instance. Such an argument ignores the fact that at the time the request for an extension was made, it appeared to the trial judge that the sale and possession charges were going to be tried together, and therefore the presence of the informant was material in the forthcoming trial. A trial judge's determination whether grounds exist for an extension under section 103–5(c) will not lightly be disturbed on review, and his discre-

■

tion will not be disturbed unless there has been a clear abuse of discretion. (People v. Irish, 77 Ill App2d 67, 222 NE2d 114.) Under these facts, we cannot say that there was such an abuse of discretion since in determining whether the granting of the extension was a reasonable exercise of discretion, the situation must be viewed as of the time it was presented to the trial judge and not as it might appear in retrospect in light of subsequent events. People v. Poland, 22 Ill2d 175, 174 NE2d 804; People v. Adams, 106 Ill App2d 396, 245 NE2d 904.

Another argument advanced by the defendant is that the court erred in denying his motion to suppress the evidence of the two seized packets of heroin on the ground that such evidence was obtained by means of an illegal search and seizure. It is undisputed that the police officers had neither a search warrant nor an arrest warrant when they entered the defendant's apartment. The Supreme Court in People v. Jones, 31 Ill2d 240, 243–44, 201 NE2d 402, aptly and succinctly discussed the standards to be applied in the context of a warrantless search and arrest:

> "The test, therefore, is not whether it was reasonable or practicable for the officers to obtain a search warrant, but whether the search was unreasonable. It is well-established that a search without a warrant is reasonable and valid if it is incident to a lawful arrest and there is no requirement that the arrest be under the authority of an arrest warrant. (Ker v. California, 374 US 23, 41, 83 S Ct 1623, 10 L Ed 726.) In turn, the validity of an arrest without a warrant depends upon whether the officers had reasonable cause to believe that an offense had been committed and that the defendant had committed it. (People v. Jones, 16 Ill2d 569, 573.) The test is not whether there is sufficient evidence to convict the arrested person, but probable cause exists

for arrest where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. (People v. Hightower, 20 Ill2d 361, 366.)"

The facts in the case at bar reveal that the officers had probable cause to believe that a crime had been committed in apartment 412. They had acted upon information supplied by an informer who had established her past reliability. They observed the informer's entering and departing the apartment, and they made a field test of the purchased matter which proved to be heroin. Their surveillance of the apartment disclosed that no one had entered or left the apartment after the informant had left. Since the officers had probable cause to make the arrest, the search incident thereto which resulted in the confiscation of the two packets of heroin was also valid.

■ The defendant questions the propriety of the officers' entering the apartment by means of the passkey. It must be emphasized that this court has concluded that probable cause for the arrest existed before they entered the apartment. Section 107–5(d) of the Criminal Code reads:

"All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest."

This statutory language is a codification of well-established case law. People v. Bankhead, 27 Ill2d 18, 187 NE2d 705, upon which the defendant heavily relies, is readily distinguishable from the instant case since in Bankhead the court held that the entry of police into the accused's apartment was wrongful because probable cause for the arrest did not exist prior to the entry to the apartment. In People v. Chavis, 79 Ill App2d 10, 223 NE2d 196, police officers gained entry into the ac-

cused's apartment with the consent of the accused's sister, but the court went on to say at page 17:

"The trial judge was correct in his refusal to suppress the articles of clothing which were lying in open view on defendant's bed. . . . Therefore, when the police arrived at Strong's apartment they had reasonable grounds to believe that Strong had committed a crime and that he was at home. *They could then legally enter the apartment even without the consent of Strong's sister, who opened the door.*" (Emphasis supplied.)

We therefore conclude that the arrest and search incident thereto were valid and that the trial court properly denied the defendant's motion to suppress.

The third and final argument made by the defendant is that the State failed to prove beyond a reasonable doubt that the defendant was in possession of narcotic drugs. The testimony of the police officers, if given credence by the trier of fact, was amply sufficient to establish the element of possession. The packets of heroin which were the subject matter of the possession charge were found in open view on the defendant's bed in his apartment. The defendant's shirt was also on the bed, and the defendant was standing by the bed holding a syringe when the police entered the apartment. There is nothing in the record to indicate that the other occupant, Florence Bush, was other than a guest in the defendant's apartment.

It is true that in order to support a conviction for illegal possession of narcotics, the prosecution must show that the narcotics were in the immediate and exclusive control of the accused and that the accused had knowledge of such possession. (People v. Embry, 20 Ill2d 331, 169 NE2d 767; People v. Mack, 12 Ill2d 151, 145 NE2d 609.) But it is also true that actual physical possession need not be demonstrated where it can be inferred

374

from the facts that constructive possession exists at the place where the narcotics are found. In People v. Nettles, 23 Ill2d 306, 308–309, 178 NE2d 361, the court said:

> "The underlying principle of the Mack and Embry cases is that where narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics. This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted. . . . Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.

> "We are of the opinion, therefore, that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt."

The facts of the instant case clearly give rise to an inference of possession sufficient to sustain the conviction of the defendant, Will Scott.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.