THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* NICHOLAS A. POLITO, Defendant-Appellee.

First District (5th Division)    No. 62356

Opinion filed September 24, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Eugene J. Rudnick, Jr., Assistant State's Attorneys, of counsel), for the People.

James R. Streicker and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant was indicted for attempt (rape), rape, deviate sexual assault, and battery in violation of sections 8—4, 11—1, 11—3 and 12—3 of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, pars. 8—4, 11—1, 11—3, 12—3.) Prior to trial, defendant filed a motion to suppress certain evidence alleging it was obtained through an unannounced forcible entry of private premises. The motion was sustained and the State now appeals, contending that exigent circumstances excused their method of entry.

At the hearing on the motion to suppress the following pertinent evidence was adduced:

*For defendant*
  *Louis Cantone*
He is a Chicago police officer. In August, 1969, he was on assignment with the Cook County State's Attorney's Office in charge of the investigation of defendant, a dentist. The complainant, defendant's receptionist, told him that on August 7 and 8, 1969, defendant had sexually molested her in an adjoining office. The alleged attacks occurred while defendant was supposedly extracting one of her teeth and she was unconscious having been drugged and gassed by defendant.

In order to obtain further evidence against defendant, Cantone requested the complainant remain in defendant's employ and submit to further dental work. She agreed. On August 14 she informed him that she had a dental appointment with defendant the following evening. Before she went to defendant's office, he gave her further instructions, and "iridescent"[1] powder was applied to certain areas of her body.

He and seven other investigators positioned themselves in and around defendant's office building at 7227 West 127 Street, Palos Heights, on August 15, 1969. Defendant arrived at about 6:30 p.m. Later that evening the complainant, while seated in defendant's office lit a cigarette, which was the pre-arranged signal, indicating she had just been given a pill preparatory to the gas anesthesia. Sometime thereafter, he and the other investigators entered the second floor of the building using a key left by the complainant under the door mat on the first floor landing. After all exits were secured, they proceeded to defendant's office. Finding no one in defendant's reception room, lab or workroom, they went to Paul Hauser's office which adjoined defendant's. Complainant previously had told him that defendant had sexually molested her in Hauser's office. He

---

[1] Although the witnesses, attorneys and court repeatedly referred to an "iridescent" powder, it seems apparent they were speaking of a type of phosphorescent powder which when exposed to "black light" would glow.

turned the knob very slowly, but the door did not open. Listening at the door he could hear soft music playing. Without knocking or announcing the officers' presence, Investigator Gehrke broke open the door with a sledge hammer, and they arrested defendant. The arrest took place between 10:15 and 10:45 p.m.

Although he had a warrant for defendant's arrest based on complainant's prior allegations and had seen him 10 to 15 times prior to the arrest, he made no attempt to arrest defendant earlier. Nothing would have prevented him from doing so, however, he "wanted to build a stronger case against him." Although aware of various items he intended to seize in defendant's office, he never attempted to obtain a search warrant.

*Harold McGrath*

He was a Chicago police officer assigned as a photographer to the State's Attorney's Office. Prior to defendant's arrest on August 15, 1969, he was in the vicinity of defendant's office building for 12 hours. At about 6:30 p.m., he observed defendant enter the building. Although he was aware of a warrant outstanding for defendant's arrest, he did not attempt to arrest him at that time. At approximately 10:15 p.m. he participated in defendant's arrest. Entry was effected by breaking open the door with a sledge hammer. None of the investigators knocked or announced their office before entering. Prior to breaking open the door, he did not hear calls for help or screams. Once inside he took photographs of the premises.

*Nicholas Polito, on his own behalf*

He was arrested in an office leased by Paul Hauser. Hauser had given him a key and permission to use the office in 1961. Occasionally, he used the office as a recovery room for his patients and he also stored medications and pop in Hauser's refrigerator. He gave complainant authority to let "patients" into any of his offices, as well as Hauser's office, however, he never authorized her to allow anyone else to enter Hauser's office.

At the conclusion of defendant's testimony he sought to quash his arrest and suppress certain evidence, including the following physical evidence seized from the office where he was arrested:

(1) one gas mask

(2) one timer

(3) one smock with the initials "N.P."

(4) photographs of the room and persons in the room including the defendant and complainant

(5) one box containing prophylactics

(6) two white towels

(7) observations made by police and photographs taken of defendant when a "black light" was shined on him revealing the presence of phosphorescent powder

He argued that arresting officers unlawfully: (1) entered private premises to arrest him without first announcing their authority and purpose, and (2) utilized an arrest warrant as a subterfuge to search private premises without obtaining a search warrant—all in contravention of his constitutional rights. (U.S. Const., amend. IV.) The court granted defendant's motion to suppress evidence based on his first argument, citing *People v. Stephens* (1974), 18 Ill. App. 3d 817, 310 N.E.2d 755, as authority. On appeal the State admits the arresting officers made an unannounced forcible entry, however, they contend that exigent circumstances existed at the time of the arrest, excusing compliance with any announcement requirement. (*Ker v. California* (1963), 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726.) Therefore, the sole issue before us is whether exigent circumstances existed in the instant case.

Opinion

We have reviewed the announcement requirement set forth in *Ker* and have found four recognized exceptions to the rule. Circumstances held to excuse compliance with the requirement exist when: (1) there is a possibility of destruction of evidence, (2) there is apprehension of physical peril, (3) there is a possibility of escape by defendant, or (4) compliance would be a useless gesture. (Annot., 21 A.L.R.Fed. 820 (1974).)[2] The State contends that two of these exceptions are applicable here. They also urge as exigent circumstances grounds which do not fit within the recognized exceptions above.

The State first contends that an unannounced forcible entry was required to preserve evidence from destruction. They argue that any delay caused by the arresting officers announcing their authority and purpose and then waiting an appropriate time for defendant's response, would allow defendant time to destroy certain evidence. In support of this contention they cite *People v. Hartfield* (1968), 94 Ill. App. 2d 421, 237 N.E.2d 193, and insist that *Hartfield* not *Stephens* correctly interprets the holding of *Ker*.

■■ We fail to see the need here to embark on an extended discussion of the holdings in *Stephens*, *Hartfield*, and *Ker*. Of primary importance in all three decisions was the fact that the evidence seized was narcotics, a substance easily and quickly destroyed. Here, the physical evidence gathered by the police, with the exception of the "iridescent" powder,

---

[2] Although this annotation deals with the Search Warrant Act (18 U.S.C. §3109 (1948)), this statute is the Federal codification of the rule set forth in *Ker v. California* (1963), 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, and the exceptions discussed therein are equally applicable to State prosecutions applying *Ker*.

could not have been rapidly destroyed. And because defendant was unaware of the existence of the powder, there is no reason to believe he would have made any attempt to destroy this evidence even if he had known police were present. We believe, therefore, that both *Stephens* and *Hartfield* are inapplicable because any delay in entry caused by the arresting officers announcing their authority and purpose would not have resulted in the destruction of physical evidence.

■■ The State next contends that the unannounced entry was necessary to protect the complainant from the danger of being sexually molested. A proper entry here would not have protected the complainant from peril. Complainant had been left alone with defendant for several hours. Even after she signaled the police that she was about to be anesthesized, they waited a sufficient time so they could be sure to catch the "defendant in the actual commission of a crime." The record does not indicate how long the police waited, however, in argument counsel for defendant referred to a 40-minute lapse while the prosecutor referred to a 20-minute lapse. Either time frame would indicate less than a precisely timed and executed plan to save complainant from sexual molestation. Indeed, the whole point of this plan was to catch defendant sexually molesting the complainant. We agree with the trial court, therefore, that the additional 5 to 15 seconds it may have taken police to knock and announce their presence and purpose, thereby complying with the dictates of the Constitution, "would not have put the complaining witness in more jeopardy than she was already."

We have previously discussed exceptions one and two and found them inapplicable here. Likewise, exceptions three and four do not apply to the facts in the instant case. The police had all exits blocked, so there was no danger here of a defendant escaping. Exception four is applicable in those instances where "the facts known to the officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture (citations)." *Miller v. United States* (1958), 357 U.S. 301, 310, 78 S. Ct. 1190, 1196, 2 L. Ed. 2d 1332, 1338.) No such facts exist here. None of the recognized exceptions, therefore, apply to the instant case.

The State also contends that the forcible entry was necessitated by the need to obtain direct evidence from conscious witnesses. Because complainant was unconscious during the alleged attacks, they argue that her testimony could be easily discredited. Police presence would assure credible testimony. Further, the officers were unaware of the exact nature of defendant's activities or in what state of dress or undress defendant performed them. Consequently, the State insists it was necessary for the officers to make a surprise entry in order to be sure to catch "defendant in the actual commission of the crime."

■■ Although we find no precedent which discusses the issue the State raises here, we believe it is clear that neither desire "to build a stronger case," nor police speculation as to what evidence they might have missed had they made a proper entry is what the Supreme Court had in mind when they spoke of exigent circumstances. Undoubtedly, any case could be strengthened by the testimony of eight police eyewitnesses. And from a prosecution standpoint, it is always best to catch the defendant in the commission of a crime. However, such desires exist in all cases, and they certainly are not so unusual as to warrant a suspension of defendant's constitutional rights.

■■ Moreover, the "iridescent" powder which appeared on defendant was sufficient to convict defendant without eyewitness testimony. Nonetheless, the State contends that the powder marks found on defendant were inconclusive, because he could argue that he improperly touched complainant and then with his hands distributed the powder to other areas of his body. Thus, all the State could prove is a battery. We cannot agree. Because the powder was applied to complainant's vaginal area the location and amount of the powder's subsequent appearance on defendant's body would be strong evidence of defendant's misconduct.

The State also argues that the lack of a "knock and announce" statute in Illinois excuses the arresting officers' method of entry. However, *Ker* sets forth a minimum constitutional standard of conduct, which must be followed regardless of the lack of State statutory provisions. Neither case cited by the State in support of this contention (*People v. Scott* (1969), 110 Ill. App. 2d 368, 249 N.E.2d 220; *People v. Scott* (1973), 13 Ill. App. 3d 620, 301 N.E.2d 118) discusses the exception of exigent circumstances as set forth in *Ker*. We, therefore, do not consider these cases good authority for the proposition the State urges us to adopt.

■■ The State finally suggests that the complainant consented to the unannounced forcible entry of police. We disagree. First, there was no evidence in the record indicating her consent. Second, even assuming she consented, complainant did not have the right to do so because she did not have "joint access or control for the most purposes" over Hauser's office. (*United States v. Matlock* (1975), 415 U.S. 164, 171, n. 7, 94 S. Ct. 988, 993 n. 7, 39 L. Ed. 2d 242, 250 n. 7.) Defendant gave complainant as his employee limited right of control to allow "patients" into Hauser's office. She, therefore, could not consent to an unannounced entry of the premises by police.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.