THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES FLETCHER, Defendant-Appellant.

First District (2nd Division)   No. 61205

Opinion filed March 8, 1977.

APPEAL from the Circuit Court of Cook County; the Hon. JAMES FELT, Judge, presiding.

Patrick A. Tuite, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and Jerome A. Saxon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, James Fletcher, was indicted for attempt burglary. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 19—1(a).) He was convicted by a jury and sentenced by the trial court to a term of three years and four months to 10 years in the Illinois Department of Corrections.

In this appeal defendant presents the following contentions: (1) that there was no evidence to sustain his attempt burglary conviction; (2) that during the hearing on defendant's motion to suppress his identification the trial court improperly restricted defense counsel's questioning of the identifying witness to matters concerning that witness' observations at the police lineup; (3) that his arrest was invalid because it was conducted without probable cause and without an arrest warrant; (4) that the police acted improperly when they seized gloves which were in defendant's hotel room at the time he was taken into custody and when they took possession of an automobile, which was parked a short distance from the same hotel; (5) that the trial court committed reversible error when it allowed the prosecution to introduce these gloves into evidence even though the prosecution failed to establish a connection between the gloves and the criminal offense charged; and (6) that the trial court's constant threat to hold defense counsel in contempt had such a chilling effect on defendant's representation that he was effectively denied proper confrontation of adverse witnesses and adequate assistance of counsel.

At approximately 7:30 p.m. on June 24, 1973, Mrs. George Lysy heard a loud pounding noise which emanated from the back storage area of a drug store located opposite her home. In response to this commotion she and her husband went out on their second floor porch to investigate. Mrs. Lysy's view of the rear of the store, however, was obstructed by foliage. Since she continued to hear the sounds of pounding, the witness yelled: "Stop hitting the building." After a moment of silence, Mrs. Lysy observed two men run alongside the storage area. As the two men passed her, the witness shouted once again. One of the men turned and looked up at her but did not stop running. He and his companion then got into a waiting automobile and sped away.

Mrs. Lysy ran downstairs and went to the area from whence she believed the pounding noise originated. She discovered a cardboard box in the back storage area, moved it aside and saw that the box concealed a hole in the drug store's wall. Near the same hole she found a broken sledgehammer with a red handle.

When the police arrived, Mrs. Lysy described the two men she had observed running as being white and in their mid-twenties. She also stated that the one who looked directly at her had dark, bushy hair with full sideburns. However, the witness was unable to describe to the police any specific characteristic relative to the mouth, nose, complexion or eye color of either man.

Several hours after providing this description to the police, Mrs. Lysy picked defendant from a police lineup. At the trial she testified that defendant was the man who turned and looked at her.

Mr. Lysy confirmed his wife's testimony concerning this incident, but he was unable to add anything to her description of the two men. However, two days prior to the attempt burglary, Mr. Lysy observed a maroon Oldsmobile parked in the space where he usually put his own vehicle. The Oldsmobile had two or three stickers on the right side of its windshield, and its body was damaged on the left side. Since the car was blocking his space, Mr. Lysy hurriedly wrote down the Oldsmobile's license plate as Number TP7521.* The witness then noticed three men coming toward the car. The group got into the Oldsmobile and backed it out of his drive.

Mr. Lysy testified that defendant was one of these three men. He also stated that defendant was one of the two men whom he saw running from the drug store's back storage area on June 24; that it was daylight when he and his wife viewed the two men; and that the fleeing men entered the same maroon Oldsmobile which was parked in his driveway on June 22.

After receiving descriptions from Mr. and Mrs. Lysy, the police proceeded to defendant's hotel because the police were aware that he owned a maroon Oldsmobile with a license plate number similar to the one given to the investigating officer by Mr. Lysy. Arriving at the hotel, the police set up surveillance outside the building. Approximately 4½ hours after the attempt burglary was reported, the officers observed defendant drive up in a maroon Oldsmobile, park the car in an adjacent rear alley and go into the hotel.

One of the police officers checked the automobile and ascertained that it matched Mr. Lysy's description and bore license plate number TP2571. The two policemen then went into the hotel, obtained defendant's room number from the desk clerk and proceeded to his floor. While seeking

* Inquiry by police established that license TP7521 had been issued for a different car. The automobile registration revealed that the car was a green 1964 Dodge.

defendant's room, an officer noticed a young woman preceding him down the corridor. She came to defendant's door and knocked. Defendant asked: "Who's there?" At this juncture the police officer showed the woman his identification and silently signaled her to remain quiet. He then told her to respond. She stated her name, and the officer told her to get out of the way. Defendant opened his door, but when he saw the police, he attempted to close it. However, the police officer forced the door open before defendant was able completely to shut it. Defendant was arrested as he fled toward the rear portion of his hotel room.

The police seized four clear plastic gloves which were lying in open view on top of a dresser. One of the gloves was marked with a reddish tint. However, no scientific analysis was conducted by the police to determine whether this tint matched the red paint on the handle of the sledgehammer which was found at the scene of the attempt burglary.

The police drove the Oldsmobile to the police station parking lot. Mr. Lysy was able to select this vehicle from 50 to 60 other cars and identify it as the automobile he had seen on June 22 and June 24. Even though Mr. Lysy was present at the police station when his wife selected the defendant from the lineup, the police did not ask him to view the same group of men.

During trial it was stipulated that the Oldsmobile was owned by defendant; that no fingerprints were found on the sledgehammer; that a fingerprint on the cardboard box was not defendant's; and that defendant was in his late thirties.

Defendant contends that the descriptions of the fleeing men provided by the two prosecution witnesses were vague and inaccurate. He bases this assertion on the following facts elicited at his trial: (1) Mrs. Lysy admitted that her view of the two men was blocked by foliage for part of the time and that she observed the men from a distance of 40 feet for a time period of less than five to ten seconds; (2) both Mr. and Mrs. Lysy described the two men as individuals in their mid-twenties, yet defendant was in his late thirties when the alleged crime was committed; (3) at trial both prosecution witnesses were able to identify defendant as one of the two fleeing men, but neither witness was able to give the police a description of the basic facial characteristics of the two individuals whom they observed running from the back storage area of the drug store; and (4) the police did not request Mr. Lysy to view the lineup from which his wife selected defendant even though Mr. Lysy related that he also saw the two running men. Because of this, defendant argues that Mr. and Mrs. Lysy's identification of him was so indefinite as to be inadequate to sustain his conviction for attempt burglary. We disagree with this contention insofar as the matter of identification is concerned.

■■ It is well established that the testimony of one eyewitness is sufficient to convict provided the witness is credible and the viewing of the accused was under such circumstances as would permit a positive identification. (*People v. Martin* (1970), 47 Ill. 2d 331, 334-35, 265 N.E.2d 685, 687; *People v. Brinkley* (1965), 33 Ill. 2d 403, 405-06, 211 N.E.2d 730, 732.) Mrs. Lysy's identification of defendant was positive and certain. Without hesitation, she was able to select defendant from a police lineup and identify him at his trial. The identification is strongly supported by her husband who previously observed defendant.

It is our opinion that the discrepancy between defendant's actual age as compared with Mrs. Lysy's estimate is not persuasive. Even though Mr. Lysy testified that defendant appeared older than his mid-twenties at trial, Mrs. Lysy reasserted in her trial testimony that defendant still appeared to her to be approximately 25 years of age. Such a difference of opinion in this area is neither surprising nor overly significant.

Mrs. Lysy had an adequate opportunity to clearly view defendant at a short distance and was able to observe him for an adequate length of time under good lighting conditions. Her identification of defendant as one of the two men who fled from the scene of the attempt burglary was adequate. However, we do not consider that the establishment of this fact alone is sufficient circumstantial evidence to sustain defendant's conviction.

A conviction can be sustained upon circumstantial evidence as well as upon direct evidence. (*People v. Belousek* (1st Dist. 1969), 110 Ill. App. 2d 442, 447, 249 N.E.2d 693, 696.) Suspicious circumstances, however, although of probative value, cannot substitute for proof, and suspicions or probabilities are not enough to convict. (*People v. Curran* (1st Dist. 1972), 6 Ill. App. 3d 792, 795, 286 N.E.2d 594, 597.) A conviction based on circumstantial evidence may be upheld only where the proof of circumstances leads to the conclusion beyond a reasonable doubt that defendant committed the crime as charged. (*People v. Lofton* (1st Dist. 1965), 64 Ill. App. 2d 238, 243, 212 N.E.2d 705, 708.) Mere presence at the scene of a crime is not sufficient in itself to sustain a conviction. (*People v. Wilson* (4th Dist. 1974), 19 Ill. App. 3d 625, 627, 312 N.E.2d 30, 32.) Nor does flight from the scene, in and of itself, prove guilt. *People v. Lofton.*

■■ The testimony of the two prosecution witnesses established only that defendant was present near the scene of the attempt burglary and that he ran from the location. Neither witness saw defendant use the sledgehammer to cause the hole in the back wall of the drug store; nor did they see him carrying tools of any kind while he ran. Additionally, the prosecution was unable to produce any forensic evidence that connected defendant to the physical instruments used in the attempt burglary.

Mere presence and flight do not establish that defendant was the person

who actually attempted the burglary by making the hole in the wall. In any event, these facts alone fall far short of proof beyond a reasonable doubt.

■■■ Neither do we believe that the proof was sufficient to show accountability on the part of defendant. Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c)) provides that a person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

However, mere presence at the scene of a crime together with flight does not establish accountability in the absence of other circumstances indicating a common design to do an unlawful act. (*In re Whittenburg* (1st Dist. 1976), 37 Ill. App. 3d 793, 796, 347 N.E.2d 103, 105; *In re Woods* (1st Dist. 1974), 20 Ill. App. 3d 641, 650, 314 N.E.2d 606, 612.) After carefully examining the record, we are unable to discover any additional circumstances which would compel us to conclude that defendant solicited, aided, abetted, agreed to or attempted to aid the person who committed the attempt burglary. There is nothing, therefore, to corroborate the suspicion of complicity generated by defendant's presence at and flight from the back storage area of the drug store.

■■ Where the only evidence of guilt is circumstantial, the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78, 250 N.E.2d 651, 654.) The evidence, when viewed as a whole, does not establish defendant's guilt beyond a reasonable doubt.

We have noted also defendant's arguments concerning the validity of his warrantless arrest and the subsequent search of his hotel room. Since we have determined that defendant was not proved guilty beyond a reasonable doubt, we do not reach this issue. Nor is it necessary that we consider defendant's other contentions.

For these reasons the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING, P. J., and STAMOS, J., concur.