(No. 49485

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JAMES FLETCHER, Appellee.

*Opinion filed May 16, 1978.*

KLUCZYNSKI, J., took no part.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, and Lee T. Hettinger, James J. Veldman, Laurence J. Bolon, and William F. Ward, Jr., Assistant State's Attorneys, of counsel), for the People.

Patrick A. Tuite, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, James Fletcher, was convicted in a jury trial of attempted burglary (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 19—1(a)). The circuit court of Cook County sentenced him to a term of 3 years and 4 months to 10 years imprisonment. The appellate court reversed on the grounds defendant was not proved guilty beyond a

reasonable doubt. (46 Ill. App. 3d 530.) We allowed the State's petition for leave to appeal.

Defendant urges that the appellate court's reversal on reasonable doubt grounds is tantamount to an acquittal, and that this appeal therefore violates the double jeopardy protections of the Illinois and Federal constitutions. This argument was specifically rejected by this court in *People v. Schwartz* (1974), 58 Ill. 2d 274, and more recently in *People v. Powell* (1978), 72 Ill. 2d 50. Those opinions hold the double jeopardy provisions are not violated by completion of the appellate process and are dispositive of this argument.

The facts are the crux of this case. At 7:30 p.m. on June 24, 1973, Mr. and Mrs. George Lysy heard a loud pounding noise emanating from the rear storage area of a drug store opposite their home. They went onto their second-floor porch to investigate, but their view of the area of the commotion was obstructed by foliage. Mrs. Lysy shouted and the pounding ceased. After a moment of silence, the Lysys observed two men running from the storage area. When these men were about 40 feet away from her in the parking lot, Mrs. Lysy yelled "thief, thief." One of the men turned and looked up at her but did not stop running. The two men then entered a maroon car which had sped up, and rode away. The Lysys ran downstairs to the area behind the drug store. They found there a cardboard box concealing a hole in the store's cinderblock wall. Near the hole was a sledgehammer with a broken handle, which was inadvertently destroyed by the police prior to trial.

When the police arrived, Mrs. Lysy described the man who had looked up at her as white, in his mid-twenties, with dark bushy hair and full sideburns. She gave no other details of the appearance of either man.

Mr. Lysy related to police that his suspicion had been aroused two days earlier when a maroon Oldsmobile or

Pontiac had parked in the space where he usually parked his own car. The car had body damage on the front left side and several stickers on the windshield. He had hurriedly written down the license number as TP 7521. Mr. Lysy had observed three men enter the car that evening and drive away.

Based upon the similarity between defendant's car and license number (maroon Oldsmobile, TP 2571) and that of the car reported (maroon Oldsmobile or Pontiac, TP 7521), as well as their knowledge of defendant, the police officers proceeded to defendant's hotel and set up surveillance outside the building. Defendant lived about 12 miles from the site of the attempted burglary. Approximately 4½ hours after the incident, the police observed defendant drive up, park his maroon Oldsmobile in an alley, and enter the hotel.

One of the officers checked the car and saw that it fit Mr. Lysy's description. The two officers went into the hotel, obtained defendant's room number from the clerk, and proceeded to his floor. As he approached defendant's room, an officer noticed a young woman preceding him down the corridor. She came to defendant's room and knocked. Defendant asked: "Who's there?" At this juncture, the police officer showed the woman his identification and silently signaled her to respond. She stated her name, then was directed by the officer, who had been joined by his partner, to get out of the way.

When the defendant opened the door, he saw the two plainclothesmen. He tried to close the door, but the police forced their way into his room. The testimony was conflicting as to when the officers identified themselves. Defendant was arrested as he fled toward the rear part of the room, and taken to the police station.

A police officer testified that after defendant was informed that a lineup was to be held where witnesses would view him, he had poured water onto his head,

thereby plastering down his otherwise bushy hair. There was also testimony before the jury that defendant "appeared to be acting as if he was intoxicated" during the lineup. This conduct and the wet hair were characterized by the State during jury arguments as attempts by defendant to confuse the witnesses at the lineup so that they would not recognize him or would not believe a man in his condition could have attempted a commercial burglary just several hours earlier. At that lineup Mrs. Lysy picked defendant as the man who turned and looked at her. Although he viewed the lineup with his wife, Mr. Lysy was not called upon to make an identification at that time. Mr. Lysy did, however, pick the defendant's car from the 50 to 60 cars in the police parking lot and identify it as the automobile he had seen on June 22 and June 24.

During the trial, Mr. and Mrs. Lysy both made in-court identifications of the defendant. Mr. Lysy testified that defendant was one of the two men whom he saw running from the drug store's rear storage area on June 24 and that he was one of the three men who had entered the maroon Oldsmobile when it was parked near the Lysy home on June 22. Mrs. Lysy testified that the defendant was the man who had looked up at her while fleeing from the storage area on June 24, although she agreed that defendant looked older than his mid-twenties as she had initially described him. The appellate court concluded that the identification of the defendant was "positive and certain" and therefore "adequate" to support the jury's conclusion that it was he whom the Lysys saw. 46 Ill. App. 3d 530, 534.

In order to sustain a conviction for attempted burglary in this context, the State must prove that, with the intent to commit this offense, the defendant did an act which constituted a substantial step toward knowingly entering the drug store with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1973, ch. 38, pars. 8–4,

19—1.) The trial court believed this burden had been met, but the appellate court was of the opinion that the proof established only "mere presence and flight" and was insufficient to prove defendant's guilt beyond a reasonable doubt. 46 Ill. App. 3d 530, 534-35, citing *People v. Wilson* (1974), 19 Ill. App. 3d 625 (mere presence), and *People v. Lofton* (1965), 64 Ill. App. 2d 238 (flight). See also *People v. Boyd* (1959), 17 Ill. 2d 321, 327; *People v. Weber* (1948), 401 Ill. 584, 603.

This court recently discussed the use of circumstantial evidence in criminal cases in *People v. Williams* (1977), 66 Ill. 2d 478, 484-85:

"We find apposite here the statement in *People v. Marino,* 44 Ill. 2d 562, 580, that 'it is well settled that the commission of an offense may be established entirely by circumstantial evidence. As we observed in *People v. Bernette,* 30 Ill. 2d 359, 367, "a conviction may be sustained upon circumstantial evidence as well as direct evidence, *(People v. Russell,* 17 Ill. 2d 328,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. *(People v. Magnafichi,* 9 Ill. 2d 169; *People v. Grizzel,* 382 Ill. 11.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt." ' Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. *(People v. Hanson,* 59 Ill. 266; *People v. Branion,* 47 Ill. 2d 70.)"

In our judgment, the evidence here, when viewed as a whole, establishes more than "mere presence and flight." Defendant was positively identified by both Mr. and Mrs. Lysy as one of the two men they saw running to defendant's car from the immediate vicinity of the attempted burglary. Defendant was also identified by Mr. Lysy as one of the three men who had been in the same car in the same area two days earlier, although it was some 12 city miles from defendant's hotel. He attempted to prevent the officers' entrance into his hotel room. When informed that he was to be placed in a lineup and viewed by witnesses, he attempted to alter his appearance and conducted himself in a manner which could be interpreted as an attempt to confuse or deceive the witnesses. In our opinion, this testimony suffices to prove guilt beyond a reasonable doubt.

Accordingly, the judgment of the appellate court is reversed and the cause remanded to that court for a consideration of alleged errors which the appellate court, disposing of the case as it originally did, found it unnecessary to pass upon.

*Reversed and remanded, with directions.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.