THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES FLETCHER, Defendant-Appellant.
First District (2nd Division)   No. 61205

Opinion filed November 8, 1978.

504

Patrick A. Tuite, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and Jerome A. Saxon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, James Fletcher, was convicted of attempt burglary by a jury and sentenced to the penitentiary for a term of three years and four months to ten years. On direct appeal, the appellate court reversed his conviction based solely on its determination that he was not proven guilty beyond a reasonable doubt. (46 Ill. App. 3d 530, 361 N.E.2d 97.) The supreme court granted the State's petition for leave to appeal (66 Ill. 2d 633) and reversed the appellate court's judgment. (72 Ill. 2d 66, 377 N.E.2d 809.) The cause was remanded for this court's resolution of the other issues advanced by defendant but not considered in his intital appeal.

The evidence relating directly to defendant's criminal involvement was adequately set forth in this court's opinion and in the supreme court's opinion. However, in order properly to evaluate defendant's remaining contentions, it is necessary that we primarily concern ourselves with the facts and circumstances pertaining to defendant's arrest and the subsequent search of his hotel room by the police.

Immediately after the attempt burglary took place, on June 24, 1973, at 7:30 p.m., Mrs. George Lysy observed the defendant and another man run from the scene and enter a maroon automobile, which then sped away. When the police arrived at approximately 8 p.m., Mrs. Lysy described defendant as white, in his mid-twenties, with dark bushy hair and full sideburns. Additionally, Mrs. Lysy's husband informed the police that his suspicion had been aroused two days earlier when a maroon Oldsmobile had parked in the space where he usually put his own vehicle. This car had two or three stickers on the right side of its windshield, and its body was damaged on the left side. Since it was blocking his parking space, he had hurriedly written down this automobile's license number as

TP 7521. According to Mr. Lysy, this was the same vehicle in which the two men escaped subsequent to the commission of said offense.

Immediately thereafter, one of the investigating police officers ascertained that defendant's automobile matched Mr. Lysy's description and bore license plate number TP 2571. On account of this similarity as well as their knowledge of defendant's physical characteristics, the police proceeded to defendant's hotel and set up surveillance outside the building. Defendant lived approximately 12 miles from the site of the attempt burglary. At about 10:15 p.m. the police entered this hotel and asked for defendant. The desk clerk rang defendant's room, but there was no answer. The police then left and returned to their posts on the street. Approximately an hour and a half later, the officers observed defendant drive up, park his maroon Oldsmobile in an adjacent rear alley and go into the hotel.

One of the police officers checked the automobile and determined that it fit Mr. Lysy's description. The other officer called for an assist car. When these tasks were completed, the two police officers went into the hotel, obtained defendant's room number from the clerk and proceeded to his floor. As he approached defendant's room, one of the officers noticed a young woman preceding him down the corridor. She came to defendant's room and knocked. Defendant asked, "Who's there?" At this juncture the police officer showed the woman his identification and silently signaled her to respond. She stated her name, then was directed by the officer, who had been joined by his partner, to get out of the way.

When defendant opened the door, he saw the two plainclothesmen. He tried to close the door, but the two police officers forced their way into his room. The testimony was conflicting as to when the officers identified themselves. Defendant was arrested as he fled toward the rear portion of the room.

Defendant's 12th-floor hotel room was a one-room studio. This room contained a sitting chair, several tables and a dresser. Subsequent to defendant's arrest, the police seized four clear plastic gloves which were lying in open view on top of the aforementioned dresser. One of the gloves was marked with a reddish tint. However, no scientific analysis was conducted by the police to determine whether this tint matched the red paint on the handle of the sledgehammer which was found at the scene of the attempt burglary. The police also drove defendant's Oldsmobile to the police station parking lot where it was viewed by Mr. Lysy.

Prior to trial, defendant moved to suppress this evidence on the basis that these items were the product of an unlawful arrest and search. At the hearing on this motion, defendant testified that he did not give the police permission to enter his hotel room, to search his room or automobile or to

remove anything therefrom. He also stated that the police did not present an arrest warrant or a search warrant for his residence or car. Although this testimony was uncontradicted, the trial court, after hearing testimony from the arresting police officer and considering the arguments of counsel, denied defendant's motion and entered a finding of probable cause.

In considering the remaining issues raised by defendant's direct appeal to this court, the first contention that must be examined is defendant's assertion that his arrest was unlawful because it was conducted without probable cause and without an arrest warrant and that, in view of this illegality, the trial court erred when it refused to suppress the seizure of the plastic gloves and his automobile.

■■■ The Federal Constitution and the constitution of the State of Illinois do not prohibit all searches but only those which are unreasonable. (*Go-Bart Importing Co. v. United States* (1931), 282 U.S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374; see *People v. Peak* (1963), 29 Ill. 2d 343, 346, 194 N.E.2d 322, 325.) The test of the constitutionality of a search is not whether it was reasonable or practicable for the police officers to obtain a search warrant but whether the search was unreasonable. (*People v. Wright* (1968), 41 Ill. 2d 170, 173, 242 N.E.2d 180, 182-83, *cert. denied* (1969), 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993.) It is well settled that a warrantless search incident to a lawful arrest is authorized when reasonably necessary to protect the arresting officer from serious bodily harm, to prevent the prisoner from escaping, or to discover the fruits of the crime. (See *People v. Alexander* (1961), 21 Ill. 2d 347, 352, 172 N.E.2d 785, 788, *cert. denied* (1961), 368 U.S. 875, 7 L. Ed. 2d 77, 82 S. Ct. 122; see generally *Weeks v. United States* (1914), 232 U.S. 383, 392, 58 L. Ed. 652, 655, 34 S. Ct. 341.) Additionally, criminal evidence which is in plain view may be seized pursuant to a legal arrest even though a search warrant has not been procured beforehand. (*Ker v. California* (1963), 374 U.S. 23, 42-43, 10 L. Ed. 2d 726, 83 S. Ct. 1623; see *People v. Wright*.) The case authorities have imposed no requirement that the arrest be under the authority of an arrest warrant but only that it be lawful. (See *Ker v. California*.) Consequently, it is evident that if defendant's arrest was lawful, the arresting officers' seizure of the four plastic gloves was proper since these items were in full view when the arrest was effectuated.

The pivotal question, therefore, is whether defendant's arrest was lawful. In order to resolve this issue, we must first determine whether the police had probable cause to arrest defendant.

Police officers are authorized by statute to make arrests without warrants where they have reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) Defendant contends that at the time of his arrest the police

officers had no reasonable grounds to believe that he had committed a criminal offense and, because of this, he argues that his arrest without a warrant was illegal.

■■■ Whether or not reasonable grounds for an arrest exist in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. (See *People v. Higgins* (1972), 50 Ill. 2d 221, 227, 278 N.E.2d 68, 72, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.) In deciding this question, courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. (*Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 69 S. Ct. 1302.) However, Illinois courts have adopted the viewpoint that a police officer is not justified in making an arrest without a warrant on the "bare suspicion" that the suspected individual may be guilty of an offense. (*People v. Edge* (1950), 406 Ill. 490, 496, 94 N.E.2d 359, 363; *Henry v. United States* (1959), 361 U.S. 98, 101, 4 L. Ed. 2d 134, 80 S. Ct. 168.) On the other hand, probable cause or reasonable grounds means something less than that quantum of evidence which would result in a conviction. (*People v. Fiorito* (1960), 19 Ill. 2d 246, 253, 166 N.E.2d 606, 611, *cert. denied* (1960), 364 U.S. 870, 5 L. Ed. 2d 93, 81 S. Ct. 113.) Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty. (*Ker v. California;* accord, *People v. Peak.*) A reviewing court will not disturb a finding of probable cause unless it is manifestly erroneous. *People v. Brooks* (1972), 51 Ill. 2d 156, 165, 281 N.E.2d 326, 332-33.

■■ The information within the knowledge of the arresting police officers at the time they arrived at defendant's hotel room, as the trial court found, clearly supplied adequate grounds for a reasonable belief that defendant had committed the offense of attempt burglary. We base this conclusion on the following facts: The police officers had obtained from Mrs. Lysy a description of one of the two individuals seen fleeing the scene of the crime. That description was known to match the general physical characteristics of the defendant: White male, with curly black hair, pronounced sideburns and appearing to be in his mid- to late twenties. In addition, Mrs. Lysy's husband had observed the getaway car two days prior to this incident when it was parked in his parking space. He wrote down its license number rapidly because he was afraid that he would be seen. He then viewed the same maroon Oldsmobile with noticeable dents on the side and several vehicle stickers on its windshield pick up the two

fleeing men and drive off on the night of the attempt burglary. After checking a list of known criminals, the investigating police officers discovered defendant's name next to license plate number TP 2571, which was the same as the one reported by Mr. Lysy except for the transposition of the first and third numbers. A recent police report listed defendant's address. Surveillance was then set up outside that location. Approximately 4½ hours after the commission of this offense, defendant drove up to the hotel in a maroon Oldsmobile and parked in an adjacent alley. After defendant had exited this vehicle, one of the officers inspected it and verified that its license number was TP 2571 and that the automobile matched Mr. Lysy's description in that it was a maroon 1967 or 1968 Oldsmobile with four suburban vehicle stickers on the front windshield and a very discernible dent on its left side. Under such circumstances it is readily apparent that the police had probable cause to arrest defendant.

Defendant calls attention to the fact that the police failed to show either witness his photograph which they had in their possession at the initiation of the attempt burglary investigation. He contends that this omission indicates that the police did not have sufficient identification evidence to establish probable cause. We disagree.

It is true that the police did not show defendant's photograph to the Lysys, as they perhaps should have done. Identification of such photograph would have provided the police with additional corroborating evidence. However, in view of the convincing nature of the information that was made available to the police during their investigation, we cannot say that this failure establishes that the trial court's finding of probable cause was manifestly erroneous.

It is next argued that the lawfulness of defendant's arrest, even if it was based upon probable cause, was negated by the location of the arrest and the method of entry into defendant's hotel room. Defendant bases this argument on the following facts and allegations: (1) although the police could have arrested him on the street after he exited his automobile, they wrongfully waited until he went upstairs so that they could conduct a search of his room incident to the arrest; (2) the police improperly used subterfuge to gain entrance to his hotel room; and (3) there were no "exigent circumstances" present to excuse the failure of the police to announce themselves prior to entering his residence.

■■ Defendant's first assertion is without merit. As previously noted, one of the arresting police officers testified that after defendant left his automobile, he went over to examine this vehicle in order to find out if it matched the description of the getaway car provided by Mr. Lysy; that prior to conducting this examination, he directed his partner to call for an assist car; and that defendant had already entered the hotel when he

completed his inspection and his partner returned. Since verification of the witness' description was an essential element in establishing probable cause, we feel that under these circumstances the officer's act of taking time to examine defendant's vehicle was entirely proper even though this action foreclosed the possibility of arresting defendant on the street. Similarly, the expenditure of time to call for assistance was also proper since this act is routinely done for the police officers' protection.

■■ We also cannot agree with defendant's second allegation. It is true that the arresting police officers' use of the woman, who preceded them to defendant's hotel room, amounted to subterfuge. However, employment of this deception resulted only in defendant opening his door. Once defendant viewed the two plainclothesmen, he attempted to bar their entry by slamming his door shut. It was then necessary for the police to force the door open in order to gain entrance. It is manifest, therefore, that actual entry into defendant's hotel room was accomplished by the use of force and not by the use of subterfuge. Accordingly, the utilization of such device by the police is not relevant to our assessment of the lawfulness of defendant's arrest.

Regarding defendant's third assertion, the following testimony by the arresting police officer is particularly relevant.

At the hearing on defendant's motion to suppress, the officer was asked to describe defendant's arrest. This colloquy then ensued:

"A. I got out of the elevator and my partner—not knowing the Commonwealth Hotel, my partner went to the left of the elevator in search of the room. I proceeded to the right, where this black girl came out of the stairway approximately three, four steps ahead of me.

I positioned myself in one of the doorways and she walked into the corridor and took a right-hand turn and all the way to the far room next to the stairs and I looked, and it was the room of Mr. Fletcher's.

She knocked on the door and I explained to her, police—and Mr. Fletcher at this point stated, who is there and I said—

Q. Indicating for the record he put his hand up to his mouth as cautioning to be quiet.

A. She stated her name, which I can't quite remember what she said—at this point, my partner was coming around in search of me. We was both standing there with the black woman and Fletcher opened the door.

The black woman ran down the stairs and upon opening the door, Fletcher, ran to the rear of the room after trying to slam the door on me.

Q. After he ran to the rear of the room, what did you do?

A. *I pushed open the door as Fletcher was running to the rear of the room I announced, police,* and said, freeze." (Emphasis added.)

During the trial in this matter, the same officer was asked to relate what he observed when defendant's door opened. He responded:

"I observed the defendant inside the hotel room, I announced, 'Police.' I felt the door jam shut. I had my leg inside the door and I pushed the door back open."

Defendant, relying on the former testimony and *People v. Polito* (1st Dist. 1976), 42 Ill. App. 3d 372, 355 N.E.2d 725, *cert. denied* (1977), 434 U.S. 873, 54 L. Ed. 2d 153, 98 S. Ct. 220, argues that the police did not announce their office prior to entering his hotel room, as they were required to do, and that because of this failure his arrest was rendered invalid.

In *Polito* this court upheld the trial court's suppression of evidence in a sexual abuse case because of the arresting police officers' unannounced forcible entry into defendant's private office. This holding was based primarily on *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623. The *Ker* opinion was interpreted as requiring the police to announce their office prior to forcing their way into private premises for the purpose of making an arrest. This court's reading of *Ker* also indicated that compliance with such requirement was excused when the following "exigent circumstances" were present: (1) where there is a possibility of destruction of evidence; (2) where there is apprehension of physical peril; (3) where there is a possibility of escape by defendant; or (4) where compliance would be a useless gesture. The State contends that the first and third exceptions are applicable. Defendant argues that there was no evidence to be destroyed in this case and that the likelihood of escape was not present since his hotel room was 12 stories above the street.

■■ However, subsequent to the *Polito* decision our supreme court reconsidered this issue in *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067, 1072. After pointing out that Illinois has no statute requiring the police to announce their authority and purpose before entering private premises to make an authorized arrest (see Ill. Rev. Stat. 1975, ch. 38, par. 107—5(d)), and after making an extensive review of the majority and dissenting opinions in *Ker*, the court concluded "that the United States Supreme Court has not expressly elevated to a constitutional requirement the practice of announcing authority and purpose." Additionally, a careful examination of the record has revealed, as the State contends, that this issue was not specified in defendant's written motion for a new trial. Section 116—1—(b)(c) of the Code of Criminal Procedure of 1963 provides that the motion for a new trial shall be in writing and shall specify the grounds therefor. (Ill. Rev. Stat. 1973,

ch. 38, par. 116—1(b), (c).) The general rule is that failure to raise a particular issue in the written motion constitutes a waiver and hence that issue cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.) This waiver rule applies to constitutional as well as to other issues. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Supreme Court Rule 615(a) provides in part:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).)

However, this rule does not mandate that a reviewing court consider all errors involving substantial rights regardless of whether or not the same have been brought to the attention of the trial court. Rather the rule is a means of meliorating the harshness of the strict application of the general waiver rule. (*People v. Pickett.*) Before plain error can be considered as a means of circumventing the aforementioned waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed. (*People v. Precup.*) In light of the conflicting nature of the arresting police officer's testimony and the supreme court's pronouncement in *Wolgemuth,* we do not think it clearly evident that the officers' actions in this matter constitute such error. Accordingly, defendant's third assertion is deemed to have been waived.

Having found defendant's contentions concerning his arrest to be not sustainable, we shall now consider whether the searches which produced the plastic gloves and defendant's automobile were reasonable. Defendant contends that these searches were unreasonable in that the police could practicably have obtained a search warrant for this evidence.

■■ ■■ As was stated previously, the arresting police officers were not required to obtain a search warrant for the four plastic gloves because the seizure of these articles was done pursuant to defendant's lawful arrest and because this seizure was not the product of a search in that these gloves were in plain view on top of defendant's dresser in his one-room studio apartment when the arrest was made. (*Ker v. California;* see *People v. Wright.*) Nor can it be validly argued that the police had enough time to procure a search warrant prior to arresting defendant. It is true that a period of approximately 4½ hours elapsed between the attempt burglary and defendant's arrival at his hotel. However, the information given to the police by the two witnesses was not corroborated until the officers had the opportunity to examine defendant's vehicle in the alley next to the hotel. Probable cause for defendant's arrest did not exist prior to this time. Under such circumstances, it is patent that the arresting officers were not required to leave defendant unattended in order to get a search warrant.

Regarding the warrantless seizure of his automobile for identification purposes, defendant argues that this seizure cannot be justified as being incident to his arrest since he was "twelve stores above and a quarter of a block away" when taken into custody. Defendant also contends that the police did not have reason to suspect that contraband or weapons were secreted in his vehicle.

■■ It is well established that once an accused is under arrest and in custody, a warrantless search made at another location is simply not incident to the arrest. (*Preston v. United States* (1964), 376 U.S. 364, 367, 11 L. Ed. 2d 777, 84 S. Ct. 881.) Consequently, the seizure of defendant's Oldsmobile cannot be legitimized as being incident to his arrest. However, an automobile may be seized without a warrant where the police have probable cause to believe that the car is the instrument of or evidence concerning the crime for which the accused has been arrested. See *People v. Peter* (1973), 55 Ill. 2d 443, 454-56, 303 N.E.2d 398, 405-06; see generally *Chambers v. Maroney* (1970), 399 U.S. 42, 51-52, 26 L. Ed. 2d 419, 90 S. Ct. 1975.

In *People v. Peter,* the Illinois Supreme Court upheld the warrantless seizure of defendant's car under similar circumstances. In that case a young woman had been murdered subsequent to being picked up by a motorist while hitchhiking. A day later the police received an anonymous phone call which indicated that defendant was the owner of the vehicle that had picked up the victim, and that this car contained some of the victim's personal property. Approximately four hours after receiving this information, the police arrested defendant in his father-in-law's home. As he was being led away from the house, defendant was asked by the police officers if he owned an automobile. Defendant acknowledged that he did and stated that the vehicle at the curb was his. This automobile was then driven to police headquarters where it was searched. A paperback book belonging to the victim was recovered from the car's glove compartment. In distinguishing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, the court stated at page 455:

> "[The police] had probable cause to believe that a book which had belonged to the deceased was in the car's glove compartment. If the vehicle was not then seized the defendant's wife, his in-laws, his parents or his friends could have secreted the vehicle or destroyed any evidence it contained. We conclude that the officers were faced with *exigent circumstances* which justified the warrantless seizure of the automobile." (Emphasis added.) (55 Ill. 2d 443, 455.)

The court also pointed out:

> "Some may contend that the officers could have left a detail to immobilize the vehicle and deny its use to anyone until a warrant

could be secured. Such conduct would itself constitute a warrantless seizure of the vehicle. In that event there is little to choose in terms of practical consequences between an immediate seizure and search without a warrant and the car's immobilization until a warrant is obtained." (55 Ill. 2d 443, 456. See also *Chambers v. Maroney*.)

Mr. Lysy's clear and detailed description of the getaway car provided the police with probable cause to believe that defendant's automobile had been an instrumentality of the attempt burglary. An examination of the factual situation before us also reveals the presence of exigent circumstances. We base this determination on the established fact that the defendant was not the individual seen driving the getaway car on the evening of the crime. Mrs. Lysy told the police that the vehicle in question sped into a nearby parking lot, and that defendant and his companion then got in. It is evident, therefore, that the investigating officers were aware that someone other than the defendant had access to this automobile and that this person was defendant's associate. Since defendant's accomplice could have secreted the getaway car at any time, we feel that the officers had to act quickly. For this reason we are of the opinion that the warrantless seizure of defendant's car immediately after his arrest was proper.

Defendant next contends that the trial court committed reversible error when it allowed the prosecution to introduce the four plastic gloves into evidence even though the prosecution had failed to establish a connection between the gloves and the criminal offense charged. In this regard he also calls attention to the following portion of the State's closing argument to the jury:

> "No fingerprints found at the scene.
> * * *
>
> You don't have to find fingerprints. There were gloves recovered from the defendant's apartment.
> He could have used gloves."

Defendant argues that he was prejudiced by this statement since a harmless inference may be readily drawn from the possession of plastic gloves.

■■ A physical item may not be admitted into evidence unless it is connected to both the defendant and the crime. (*People v. Jones* (1961), 22 Ill. 2d 592, 599, 177 N.E.2d 112, 116.) As was stated by this court in *People v. Dixon* (1st Dist. 1976), 36 Ill. App. 3d 247, 253, 343 N.E.2d 585, 588:

> "The basic issue is one of evidentiary relevance. To connect physical evidence to the accused for eventiary purposes, possession is one but not the only factor to be considered. The

factor of connection is met if the physical evidence is sufficiently connected with the crime and with the defendant so as to make the physical evidence relevant as evidence against the defendant."

Proof of such connection may be circumstantial. (See *People v. Panczko* (1943), 381 Ill. 625, 633-34, 46 N.E.2d 28, 32.) Additionally, there is no necessity to demonstrate that an object admitted into evidence was actually used but only that the object was suitable for the commission of the crime. *People v. Miller* (1968), 40 Ill. 2d 154, 159, 238 N.E.2d 407, 410, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401.

■■ Here, an attempt burglary had been committed in that an unauthorized hole had been made in the back wall of a drugstore. Defendant was observed running from the scene. A sledgehammer with a red handle was later found near this location. The gloves in question were discovered in plain view on top of defendant's dresser when he was arrested in his room. This fact connects the gloves to defendant. It is true that the State failed to demonstrate through forensic testing that the red tint on one of the plastic gloves matched the red paint on the handle of the sledgehammer. However, it was established that there were no fingerprints on this tool. From this it could be concluded that defendant and the gloves were connected to the attempt burglary in that there were no fingerprints on the sledgehammer because the defendant wore these gloves while making the hole in the drugstore wall. Although we recognize that this is not the only inference that may be drawn from the possession of plastic gloves, we feel, nevertheless, that it is a logical one. The jury as trier of fact could place whatever weight it chose on such circumstantial evidence. (See *People v. Dixon.*) Accordingly, the gloves were properly admitted into evidence. See, *e.g., People v. Allen* (1959), 17 Ill. 2d 55, 62, 160 N.E.2d 818, 823.

In any event, it must be pointed out that the supreme court did not cite the discovery of the plastic gloves as one of its reasons for affirming defendant's conviction. (72 Ill. 2d 72, 377 N.E.2d 812.) It is apparent, therefore, that the judgment would have been the same had the gloves not been admitted. Under such circumstances the judgment of conviction will not be set aside. See *People v. Tribbett* (1968), 41 Ill. 2d 267, 272, 242 N.E.2d 249, 252.

■■ Defendant further contends that the trial court's constant threat to hold defense counsel in contempt had such a chilling effect on his representation that he was effectively denied proper confrontation of adverse witnesses and adequate assistance of counsel. However, after carefully reviewing the record on appeal, we have determined that defense counsel asked repeated misleading and inflammatory questions during cross-examination. The trial court properly sustained the State's objections to these questions and issued numerous warnings to defense

counsel concerning the impropriety of such conduct. Since defense counsel persisted in making arguments instead of asking questions, we feel that the court's admonishments, although severe, were appropriate and proper.

In his direct appeal to this court, defendant also asserted that during the hearing on the motion to suppress his identification, the trial court improperly restricted defense counsel's questioning of the identifying witness to matters concerning that witness' observations at the police lineup. Defendant argues that he was prejudiced by this limitation. We cannot agree. In our initial opinion we determined that Mrs. Lysy's identification of defendant was positive and certain. (46 Ill. App. 3d 530, 534, 361 N.E.2d 97, 100.) In view of this determination, any error that occurred was harmless.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.